STATE of Wisconsin, Plaintiff-Respondent,

v.

Cara A. ERICKSON, Defendant-Appellant.†

Court of Appeals

*No. 01–3367–CR. Submitted on briefs August 9, 2002.—Decided January 16, 2003.*

2003 WI App 43

(Also reported in 659 N.W.2d 407.)

† Petition to review denied 4-22-03.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Stephen J. Eisenberg* of *Eisenberg Law Offices, S.C.*, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Kathleen M. Ptacek*, assistant attorney general, and *James E. Doyle*, attorney general.

Before Vergeront, P.J., Roggensack and Lundsten, JJ.

¶ 1. LUNDSTEN, J. Cara Erickson appeals judgments of the circuit court convicting her of homicide by intoxicated use of a vehicle contrary to Wis. Stat. § 940.09(1)(a) (1997–98),[1] and causing injury by intoxicated operation of a vehicle contrary to Wis. Stat. § 346.63(2)(a)1. Erickson argues that her suppression motion should have been granted because police ob-

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

tained a blood sample from her in violation of the requirements set forth in *State v. Bohling*, 173 Wis. 2d 529, 533–34, 494 N.W.2d 399 (1993). In particular, Erickson complains that the blood draw was invalid because (1) it was drawn without consent and without a warrant before she was arrested, and (2) police did not have probable cause to arrest her for a drunk-driving violation or crime. We affirm the circuit court.

### *Background*

¶ 2. On August 27, 2000, at approximately 5:40 a.m., Erickson crashed her pickup truck into a vehicle, setting the vehicle on fire. One occupant of the struck vehicle was killed and another was seriously injured. Erickson was questioned at the scene and was transported to the hospital for treatment of minor injuries she sustained. After continuing his investigation at the hospital, an officer directed hospital personnel to draw a blood sample from Erickson. At the time of the blood draw, Erickson had not been placed under arrest and the officer had not acquired a warrant. Erickson's blood-alcohol content was 0.103% by weight. After the blood draw, Erickson was arrested and charged with several crimes arising out of the collision.

¶ 3. Erickson moved to suppress evidence obtained from the blood draw, and the circuit court denied the motion. Erickson pled no contest to and was convicted of homicide by intoxicated use of a vehicle and causing injury to another by intoxicated operation of a vehicle.

### *Standard of Review*

¶ 4. The material facts are not disputed. When material facts are undisputed, the constitutional rea-

sonableness of a search presents a question of law, which we review without deference to the circuit court. *State v. Swanson*, 164 Wis. 2d 437, 449–50, 475 N.W.2d 148 (1991).

### *Discussion*

#### *Whether Probable Cause to Search is a Substitute for a Formal Arrest under Bohling*

¶ 5. After the truck Erickson was driving struck a vehicle, killing one occupant and injuring another, the investigating police officer directed medical personnel to take a blood sample from Erickson without a warrant and without Erickson's consent. The parties agree that evidence obtained from the blood sample is admissible if the four prongs of *Bohling* are satisfied. In *Bohling*, the supreme court held that evidence resulting from a warrantless nonconsensual blood draw, taken at the direction of a law enforcement officer, is admissible under the following circumstances:

> (1) the blood draw is taken to obtain evidence of intoxication from a person lawfully arrested for a drunk-driving related violation or crime, (2) there is a clear indication that the blood draw will produce evidence of intoxication, (3) the method used to take the blood sample is a reasonable one and performed in a reasonable manner, and (4) the arrestee presents no reasonable objection to the blood draw.

*Bohling*, 173 Wis. 2d at 534 (footnote omitted).

¶ 6. The first dispute in this case centers on the first prong above and on a footnote in *Bohling* qualifying that prong. The footnote relies on our decision in *State v. Bentley*, 92 Wis. 2d 860, 286 N.W.2d 153 (Ct. App. 1979), and reads: "Probable cause to arrest sub-

stitutes for the predicate act of lawful arrest." *Bohling*, 173 Wis. 2d at 534 n.1. Erickson contends this footnote is both dicta and erroneous. She asserts this footnote is erroneous because *Bentley* had already been overruled by the supreme court in *Swanson* by the time *Bohling* was decided. We disagree and begin our discussion with *Bentley*.

¶ 7. In *Bentley*, we addressed whether police may direct a warrantless nonconsensual blood draw based upon both probable cause to search and exigent circumstances. In that case, police had probable cause to believe that Bentley was driving while intoxicated, but Bentley was not arrested prior to the time blood was drawn. *Bentley*, 92 Wis. 2d at 863–64. As Erickson does here, Bentley argued that an arrest is required prior to a warrantless nonconsensual blood draw and that probable cause to arrest for drunk driving is no substitute for an actual drunk-driving arrest. *Id.* at 863. We disagreed, stating: "Logic dictates that where there is probable cause for [a drunk-driving] arrest, one need not perform the formalistic rituals of arrest in order to obtain a blood sample and thus preserve possible evidence of a crime." *Id.* at 864. More importantly, our subsequent analysis in *Bentley* made clear that the absence of an arrest was not cause for suppression because the seizure of Bentley's blood was supported by both probable cause to find evidence of drunk driving and exigent circumstances.

¶ 8. Typically, probable cause *to believe blood contains evidence of* a drunk-driving violation and probable cause *to arrest for* a drunk-driving violation go hand in hand. However, police sometimes come into possession of information supporting an arrest long after the intoxicated operation and at a time when there is no longer reason to think the driver's blood contains alco-

hol. In *Bentley*, we sometimes talked in terms of probable cause *to arrest*, apparently agreeing with the State's contention that "where there is probable cause for arrest, there is probable cause for a search." *Id.* at 863. But the actual analysis in *Bentley* more aptly discussed whether, at the time of the blood draw, there was probable cause to believe Bentley's blood would furnish evidence of a crime.

¶ 9. We explained in *Bentley* that the blood evidence was admissible because exigent circumstances existed (i.e., blood rapidly metabolizing alcohol), the blood draw was performed in a reasonable manner (i.e., drawn in a hospital environment by a hospital technician), and police had "probable cause to conclude that a blood test might furnish evidence of a crime." *Id.* at 864–65. Therefore, properly read, *Bentley* is a probable-cause-to-*search* case applying the well-established exigency exception to the warrant requirement. *See generally State v. Donovan*, 91 Wis. 2d 401, 408, 283 N.W.2d 431 (Ct. App. 1979) ("Reasonableness as the ultimate standard of lawfulness of a warrantless search is fulfilled only if its two components are met: (1) probable cause to search and (2) exigent circumstances that excuse application for a judicially authorized search warrant.").

¶ 10. Erickson's contention that *Bentley* was overruled by the state supreme court in *Swanson* misapprehends the distinct issues in the two cases. *Swanson* is a search-incident-to-arrest case; it does not speak to searches based on probable cause that evidence will be found. The defendant in *Swanson* was detained based on suspicion of drunk driving. *Swanson*, 164 Wis. 2d at 442. During this detention, and in the absence of a formal arrest, an officer searched Swanson and discovered a bag of marijuana. *Id.* The State attempted to

justify the search of Swanson's person based on case law permitting searches of arrested persons incident to formal arrest. *Id.* at 450. The State argued in *Swanson* that a formal arrest should not be required if a lawful arrest could have been made. *Id.* at 451. The *Swanson* court rejected the State's argument, stating: "The actual making of a formal arrest, as opposed to the mere existence of grounds for doing so, is considered to be a significant event. The lawful arrest is not a mere formality, and without an arrest there is no justification for a full search incident to an arrest." *Id. Swanson* does not address the situation before this court in *Bentley*, the admissibility of evidence resulting from a search based on probable cause that evidence will be found and exigent circumstances. Thus, *Swanson* did not overrule *Bentley*.

¶ 11. Our conclusion that *Bentley* was not over-ruled by *Swanson* does not fully dispose of Erickson's assertion that, under *Bohling*, a formal arrest is required prior to a warrantless nonconsensual blood draw. Accordingly, we turn our attention to *Bohling* and *Bentley*.

¶ 12. *Bohling* addressed one scenario in which police officers may draw blood from a suspected drunk driver without consent and without a warrant. Among other requirements, the court held that such a draw is permissible "from a person lawfully arrested for a drunk-driving related violation or crime." *Bohling*, 173 Wis. 2d at 534. By way of footnote, the *Bohling* court added the following caveat to this requirement:

> Probable cause to arrest substitutes for the predicate act of lawful arrest. *State v. Bentley*, 92 Wis. 2d 860, 863–64, 286 N.W.2d 153 (Ct. App. 1979).

*Id.* at 534 n.1. This footnote seemingly says that, for purposes of a warrantless nonconsensual blood draw, probable cause *to arrest* for a drunk-driving-related violation or crime is a substitute for an actual arrest.[2] However, we need not rely on this footnote to affirm the circuit court's decision to permit evidence resulting from the blood draw. Regardless of the *Bentley* footnote in *Bohling*, we hold that, in the absence of an arrest, probable cause to believe blood currently contains evidence of a drunk-driving-related violation or crime satisfies the first prong of *Bohling*. Furthermore, this same probable cause necessarily satisfies the second prong of *Bohling*, that "there is a clear indication that the blood draw will produce evidence of intoxication," *Bohling*, 173 Wis. 2d at 534, because the probable cause standard used in *Bentley* is more demanding than the "clear indication" standard. *See State v. Seibel*, 163 Wis. 2d 164, 173, 471 N.W.2d 226 (1991) ("clear indication" is the equivalent of "reasonable suspicion").

¶ 13. Having resolved the test to be applied, we now turn to Erickson's argument that the particular facts of this case do not amount to probable cause to believe Erickson's blood contained evidence of drunk driving.[3]

---

[2] This *Bentley* "probable cause to arrest" alternative to a formal arrest was reiterated in *State v. Thorstad*, 2000 WI App 199, ¶ 7 n.4, 238 Wis. 2d 666, 618 N.W.2d 240.

[3] We do not address the State's arguments that the arrest was substantially contemporaneous with the blood draw and that the odor of alcohol alone supplied probable cause under the absolute sobriety law which, the State contends, is a "drunk-driving related violation or crime" under *State v. Bohling*, 173 Wis. 2d 529, 534, 494 N.W.2d 399 (1993).

*Whether There was Probable Cause to Believe Erickson's Blood Contained Evidence of a Drunk-Driving-Related Offense*

■■

¶ 14. Erickson argues that police did not possess probable cause to believe her blood contained evidence of drunk driving. When analyzing probable cause to search, "the proper inquiry is whether evidence of a crime will be found. The quantum of evidence required to establish probable cause to search is a 'fair probability' that contraband or evidence of a crime will be found in a particular place." *State v. Hughes*, 2000 WI 24, ¶ 21, 233 Wis. 2d 280, 607 N.W.2d 621 (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)) (citations omitted). Whether probable cause for a search exists is determined by analyzing the totality of the circumstances. *State v. DeSmidt*, 155 Wis. 2d 119, 131, 454 N.W.2d 780 (1990) (citing *Gates*, 462 U.S. at 238). "The test is objective: what a reasonable police officer would reasonably believe under the circumstances . . . ." *State v. Londo*, 2002 WI App 90, ¶ 10, 252 Wis. 2d 731, 643 N.W.2d 869. Probable cause is assessed by looking at practical considerations on which reasonable people, not legal technicians, act. *See State v. Pozo*, 198 Wis. 2d 705, 711, 544 N.W.2d 228 (Ct. App. 1995). Probable cause does not mean more likely than not. *State v. Paszek*, 50 Wis. 2d 619, 625, 184 N.W.2d 836 (1971). It is only necessary that the information support a reasonable belief that guilt is more than a possibility. *Id.*

¶ 15. In this case, the officer knew the following information when he ordered the blood draw. At about 5:40 a.m. on August 27, 2000, less than two hours prior to the blood draw, Erickson crashed her pickup truck into a vehicle with sufficient force to set the vehicle on

fire. One occupant in the vehicle was killed and the other was seriously injured. Erickson told the officer she remembered waking up and crashing into the vehicle. Erickson said she was returning home from dropping off a friend after a party. While at the scene, Erickson told the officer that she had drunk one beer around 1:00 a.m., but she later told medical personnel she had had three beers, the last one at 1:00 a.m. In addition, while standing about three to four feet from Erickson at the scene, the officer did not smell an odor of intoxicants. However, three emergency medical technicians who treated Erickson at the scene and transported her to the hospital reported that they smelled a strong odor of alcohol on Erickson.

██

¶ 16. These facts supply probable cause to believe Erickson's blood contained evidence of drunk driving at the time the officer directed hospital personnel to take a blood sample. Erickson admitted drinking and, at about 5:00 a.m., had just dropped off a friend after a party. Thus, there was reason to believe that Erickson had been at an all-night party where she had been drinking. The fact that Erickson gave two different reports of how much she drank suggests she tried to conceal how much she actually drank. Moreover, the medical technicians smelled a "strong" odor of alcohol on Erickson about five hours after her last reported beer, further suggesting she drank more than she admitted. While the officer did not detect an odor of intoxicants, the medical personnel were in closer proximity. From these facts, it is reasonable to conclude that Erickson dozed off and crashed into the vehicle because she was under the influence of alcohol. While it may also be reasonable to conclude that Erickson simply dozed at the wheel because she was tired, there was at

least a "fair probability" that Erickson was intoxicated and that her blood would contain evidence of her intoxication.[4]

*By the Court.*—Judgments affirmed.

---

[4] Erickson contends that the State failed to satisfy the last *Bohling* prong: "the arrestee presents no reasonable objection to the blood draw." *Bohling*, 173 Wis. 2d at 534. Erickson, however, does not contend that she made a reasonable objection. Rather, she complains she was not given a meaningful opportunity to provide a reasonable objection to the blood draw. Erickson does not develop this argument and points to no authority requiring a "meaningful opportunity" to object. We decline to address the argument. *See Barakat v. DHSS*, 191 Wis. 2d 769, 786, 530 N.W.2d 392 (Ct. App. 1995) (appellate court need not address "insufficiently developed" argument).