SHIRLEY S. ABRAHAMSON, C.J.
¶ 82. {dissenting). I conclude that the majority opinion has erred in its analysis of the court of appeals' decision accepting the no-merit report. For this reason, I dissent.
¶ 83. Before I write on the no-merit issue, which is an issue peculiar to the instant case but takes up a *50 lesser part of the majority opinion, I write on the majority opinion's lengthy discussion of the constitutionality of warrantless, nonconsensual blood draws performed on persons suspected of driving under the influence of an intoxicant in light of Missouri v. McNeely, 133 S. Ct. 1552 (2013).
¶ 84. The majority opinion is part of a trilogy of cases addressing McNeely. In addition to the instant case, the court addresses McNeely in State v. Kennedy, 2014 WI 132, 359 Wis. 2d 454, 856 N.W.2d 834, and State v. Tullberg, 2014 WI 134, 359 Wis. 2d 421, 857 N.W.2d 120, all released on the same date and referencing each other.
¶ 85. I examine two problems I see arising from the three opinions. These problems should have been worked out before releasing the opinions, but the new procedure for circulating and mandating opinions does not automatically allow for conferences on opinions. Because of the new procedure, the three opinions were on different orbits, with each draft opinion a moving target of revisions and with no opportunity for considering and conferencing the three opinions together.
¶ 86. For the text of our new procedure and some comments, see my concurrence in State v. Gonzalez, 2014 WI 124, ¶¶ 25-40, 359 Wis. 2d 1, 856 N.W.2d 580.
I
¶ 87. With regard to the constitutionality of warrantless, nonconsensual blood draws performed on drunk-driving suspects, I agree that a warrantless nonconsensual blood draw is unconstitutional in the absence of exigent circumstances or some other excep *51 tion to the warrant requirement. Thus, I agree with the majority opinion that the blood draw in the instant case was unconstitutional.
¶ 88. I also reluctantly agree with the majority opinion that the unconstitutional blood test results are nevertheless admissible under the good faith exception to the exclusionary rule. My reluctance is based on the concerns expressed in my dissent in State v. Dearborn, 2010 WI 84, ¶¶ 52-82, 327 Wis. 2d 252, 786 N.W.2d 97 (Abrahamson, C.J., dissenting). As in Dearborn, I conclude that admitting evidence seized unconstitutionally undermines the integrity of the judicial process.
¶ 89. I briefly state the factual posture of our three McNeely cases to keep the cases in focus. The instant case and Kennedy have essentially the same fact pattern. Indeed, the majority opinion in the instant case states: "We recently addressed a similar issue in State v. Kennedy, 2014 WI 132, 359 Wis. 2d 454, 856 N.W.2d 834, and we apply the same analysis employed in Kennedy to this case."[1] Nevertheless, the majority opinion does not leave the issue there; it restates the Kennedy opinion, possibly making changes as it goes.
¶ 90. In both Kennedy and the instant case, the defendant was arrested for driving under the influence.[2] In both cases, a warrantless, nonconsen *52 sual blood draw was performed. In the instant case, the blood draw was performed about one hour after the traffic stop took place; in Kennedy, the blood draw was performed just under three hours after the accident took place.[3] The outcome of both cases rests on the good faith exception.
¶ 91. In Tullberg, the defendant was not arrested. The blood draw was performed approximately two and a half hours after the accident took place.
¶ 92. One troublesome area in the three cases is reconciling the four-part test in State v. Erickson, 2003 WI App 43, 260 Wis. 2d 279, 659 N.W.2d 407, and another four-part test in State v. Bohling, 173 Wis. 2d 529, 494 N.W.2d 399 (1993), abrogated on other grounds by Missouri v. McNeely, 133 S. Ct. 1552 (2013).
¶ 93. The Erickson test for the constitutionality of a warrantless, nonconsensual blood draw performed on a drunk driving suspect is as follows:
A warrantless, nonconsensual blood draw of a suspected drunken driver complies with the Fourth Amendment if: (1) there was probable cause to believe the blood would furnish evidence of a crime; (2) the blood was drawn under exigent circumstances; (3) the *53 blood was drawn in a reasonable manner; and (4) the suspect did not reasonably object to the blood draw.[4]
¶ 94. The Bohling test for the constitutionality of a warrantless, nonconsensual blood draw performed on a drunk-driving suspect under exigent circumstances is as follows:
(1) [T]he blood draw is taken to obtain evidence of intoxication from a person lawfully arrested for a drunk-driving related violation or crime, (2) there is a clear indication that the blood draw will produce evidence of intoxication, (3) the method used to take the blood sample is a reasonable one and performed in a reasonable manner, and (4) the arrestee presents no reasonable objection to the blood draw.[5]
¶ 95. The two tests are different. Bohling applies when there is a lawful arrest or probable cause to arrest.[6] Erickson makes no reference to arrest.
¶ 96. Tullberg applies the Erickson test because in both Tullberg and Erickson there was no arrest.[7] In the instant case, the court differentiates between Bohling and Erickson by looking to whether the defendant was arrested.[8] Kennedy also relegates the Erickson test to the no-arrest situation.[9]
*54 ¶ 97. The distinction between arrest and no-arrest situations in the Bohling and Erickson tests is questionable because the Bohling test applies when there is either an arrest or probable cause to arrest. In Tullberg, the court concludes there was probable cause to arrest.[10] Thus, the Bohling test could have been applied in Tullberg. This conclusion is supported by the repeated declaration in Tullberg and Kennedy that the circumstances giving rise to probable cause to search the body by a blood draw are one and the same as those establishing probable cause to arrest.[11]
¶ 98. The facts supporting probable cause to search and probable cause to arrest may be the same in the drunk-driving context. However, the Erickson language ("probable cause to believe the blood would furnish evidence of a crime") differs from the Bohling *55 language ("there is a clear indication that the blood draw will produce evidence of intoxication"). In State v. Seibel, 163 Wis. 2d 164, 179, 471 N.W.2d 226 (1991), the court held that the clear indication factor of the Bohling test means "blood may be drawn incident to an arrest if there is a reasonable suspicion that the blood contains evidence" of a crime. The court thus held in Seibel that probable cause to search is not necessarily required to support a warrantless blood draw. The instant case reaffirms this holding in Seibel.[12]
¶ 99. I dissented in Seibel, stating that the "clear indication" language in Schmerber v. California, 384 U.S. 757 (1966), which was the source of the clear indication factor in Bohling,[13] "should be read to require the police to meet at least the probable cause standard before they can order a blood test as a search incident to arrest."[14] In my view, McNeely reaffirms the requirement that warrantless, nonconsensual blood draws performed on drunk-driving suspects be supported by probable cause to search.
¶ 100. McNeely does not squarely address whether probable cause to search is required to support warrantless, nonconsensual blood draws in the drunk-driving context. However, McNeely does state that "[i]n those drunk-driving investigations where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so."[15]
*56 ¶ 101. To obtain a warrant, probable cause to search the body is of course required.[16] McNeely permits an exception to the warrant requirement when exigent circumstances mean the act of obtaining a warrant would "significantly undermin[e] the efficacy of the search . . . ." McNeely does not permit an exception to the warrant requirement when there is no probable cause to search the body by taking a blood draw and thus no possibility of obtaining a warrant in the first place.
¶ 102. In light of McNeely, does the court still believe the Bohling test's "clear indication" factor requires only a "reasonable suspicion" that the blood draw will produce evidence of intoxication? If not, is Erickson the new test?
¶ 103. I turn now to a second issue in the three opinions: exigent circumstances. The instant opinion concludes that because the State does not contend that exigent circumstances existed aside from the natural dissipation of alcohol in the blood, the State has failed to meet its burden and the warrantless blood draw was unconstitutional.[17] I agree with this analysis.
¶ 104. Although the relevant facts are the same in Kennedy, namely that the State does not contend that exigent circumstances existed aside from the natural dissipation of alcohol in the blood, Kennedy does not treat the exigent circumstance issue in the same way as the instant opinion. Kennedy does not conclude that the State has failed to meet its burden. Rather, Kennedy keeps the issue alive (see Kennedy, *57 2014 WI 132, ¶¶ 6, 34), declaring that the court assumes, "without deciding, that the warrantless investigatory blood draw performed on Kennedy was not supported by exigent circumstances." Kennedy intimates that exigent circumstances might very well have existed by declaring that "[o]ur holding in this case must not be read to affirmatively conclude that exigent circumstances did not support the warrantless investigatory blood draw . . . ."[18] Kennedy seems to be champing at the bit to determine that exigent circumstances were present, regardless of whether the State carried its burden, but the court restrains itself.
¶ 105. Finally, Tullberg addresses the exigent circumstances exception to validate the warrantless, nonconsensual search of the defendant's blood. The validity of the warrantless, nonconsensual blood draw in Tullberg turns on probable cause to search the body (by a blood draw) and exigent circumstances.[19]
¶ 106. As I see Tullberg, the court once again whittles down what constitutes exigent circumstances.[20] The State did not demonstrate specific, articulable facts showing that the warrant process would significantly undermine the efficacy of the State's search of the defendant's body for blood and thus that the warrantless search was imperative under the circumstances.[21]
¶ 107. In Tullberg, the officer who ordered the blood draw never tried to get a warrant. The officer did not think one was needed in light of Bohling. The *58 circuit court addressed the procedure for getting a warrant, but did not estimate the time it would take to get one.[22]
¶ 108. For the reasons set forth, I am concerned that the three opinions have not been carefully integrated.[23]
II
¶ 109. I turn to the majority opinion's analysis of the court of appeals' decision to accept the no-merit report.
¶ 110. When a no-merit report is submitted as it was in the instant case, the court of appeals must independently examine the record to determine whether there are arguably meritorious grounds for appeal.[24] If there are not, the court of appeals may accept the no-merit report.[25] If there are, the court of *59 appeals must consider them. This procedure "assures that indigent defendants have the benefit of what wealthy defendants are able to acquire by purchase — a diligent and thorough review of the record and an identification of any arguable issues revealed by that review."[26]
¶ 111. In Anders v. California, 386 U.S. 738, 744 (1967), which established this no-merit procedure, the United States Supreme Court held as follows:
[I]f counsel finds [a defendant's] case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must [] be accompanied by a brief referring to anything in the record that might arguably support the appeal. . . . [T]he court — not counsel- — -then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. If it so finds it may grant counsel's request to withdraw and dismiss the appeal... . [I]f it finds any of the legal points arguable on their merits ... it must. . . afford the indigent the assistance of counsel to argue the appeal.
¶ 112. Wisconsin Stat. § 809.32 outlines the Anders procedure followed by Wisconsin courts. Wisconsin Stat. § 809.32(3) states in relevant part:
In the event that the court of appeals determines that further appellate proceedings would be frivolous and without any arguable merit, the court of appeals shall affirm the judgment of conviction or final adjudication and the denial of any postconviction or postdisposition motion and relieve the attorney of further responsibility in the case.
*60 ¶ 113. In the present case, the defendant's appellate counsel submitted a no-merit report to the court of appeals. The defendant filed a brief in response, asserting several potential grounds for appeal. The court of appeals accepted the no-merit report, stating: "After our independent review of the record, we conclude there is no arguable merit to any issue that could be raised on appeal."[27]
¶ 114. The defendant then filed a petition for review of the court of appeals' opinion and order.
¶ 115. It will be helpful in understanding the following discussion to know that the defendant's waiver of counsel in three prior Oklahoma cases is at issue in the instant case because those convictions were considered at sentencing.
¶ 116. The defendant argued at various points that the prior convictions should have been collaterally attacked by Wisconsin counsel (and thus not considered at sentencing in the instant case) either because the defendant did not knowingly, intelligently, and voluntarily enter his pleas in those cases or because the defendant did not knowingly, intelligently, and voluntarily waive counsel before entering the pleas. The defendant has claimed ineffective assistance of counsel in the instant case based on the failure of Wisconsin counsel to bring a collateral attack.
| 117. This summary simplifies a somewhat complex set of facts. The defendant has been represented by numerous attorneys in the course of this litigation. He has raised ineffective assistance of counsel claims against several of them at different points. Additional details are unnecessary to this discussion.
*61 ¶ 118. I conclude that the majority opinion commits three errors in affirming the court of appeals' opinion and order accepting the no-merit report.
¶ 119. First, the majority opinion errs in reviewing the court of appeals' decision to accept the no-merit report under the erroneous exercise of discretion standard.[28] Whether the court of appeals properly accepted the no-merit report (that is, whether there were arguably meritorious grounds for the defendant to appeal) is a question of law for the court of appeals to decide.
¶ 120. As discussed above, the court of appeals is required to "conduct a full examination of all the proceedings [] to determine if the appeal would indeed be wholly frivolous" before accepting a no-merit report.[29] Whether an appeal would be frivolous is a question of law.[30] This court reviews questions of law independently of the circuit court and court of appeals.[31] Thus, whether the court of appeals properly accepted the no-merit report presents a question of law this court decides independently of the circuit court and court of appeals. The majority opinion errs in applying the erroneous exercise of discretion standard to review the court of appeals' conclusion of law that *62 there is no arguable merit to any of the defendant's potential grounds for appeal.
¶ 121. The majority opinion cites State v. Sutton, 2012 WI 23, ¶¶ 45-48, 339 Wis. 2d 27, 810 N.W.2d 210, to support its conclusion that the court of appeals reasonably exercised its discretion.[32] But Sutton addressed a much narrower issue and does not dictate the standard of review to be applied in the present case. The discretionary decision in Sutton was whether the court of appeals should accept a no-merit report when the record revealed an arguably meritorious claim that had not been preserved.[33] We stated that the court of appeals has discretion in a no-merit proceeding to decide whether to disregard the fact that the defendant failed to preserve an issue and to "reach the merits of [that] unpreserved issue."[34] The instant case does not involve this kind of discretionary decision.
¶ 122. Even in Sutton, where the discretionary decision rested on a mistake of law, this court remanded the matter to the court of appeals to reject the no-merit report.[35] In the instant case, the court of appeals' decision was based on an error of law. As I discuss next, the court of appeals incorrectly treated the circuit court's determination that the defendant's waivers of counsel in three prior Oklahoma cases were *63 knowing, intelligent, and voluntary as a finding of fact rather than a conclusion of law.[36] Under the standard of review employed by the majority opinion, applying an incorrect legal standard, as the court of appeals did here, is an erroneous exercise of discretion that requires reversal.[37]
¶ 123. The majority opinion's second error is its failure to acknowledge that the court of appeals treated the circuit court's determination that the defendant's waivers of counsel in three prior Oklahoma cases were knowing, intelligent, and voluntary as a finding of fact rather than a conclusion of law.[38] The court of appeals' opinion and order states:
[The defendant] argues that the waivers of counsel were not made knowingly and intelligently. As we described above, the circuit court has already determined otherwise. On appeal, we affirm that finding of fact unless it is clearly erroneous. [The defendant's] response does not give us any reason to believe the findings were clearly erroneous.[39]
¶ 124. Whether the defendant's waivers of counsel were knowing, intelligent, and voluntary is a question of constitutional fact, not a question of fact.[40] When reviewing a question of constitutional fact, an *64 appellate court accepts the circuit court's findings of historical facts unless clearly erroneous, but independently applies constitutional principles to those facts.[41] In other words, the ultimate question of whether the defendant's waivers of counsel were constitutionally valid is a question of law the court of appeals should have decided independently of the circuit court.
¶ 125. The majority opinion ignores this error by the court of appeals without any explanation. The majority opinion does so despite the fact that an error of law is grounds for reversal even under the erroneous exercise of discretion standard. "Discretionary decisions must be arrived at by application of the proper legal standards; the failure to apply the correct legal standards is an erroneous exercise of discretion."[42]
¶ 126. The majority opinion's third error is ignoring the court of appeals' failure to review one of the defendant's potential grounds for appeal.
¶ 127. In his brief to this court, the defendant raises a second claim of ineffective assistance of counsel in Wisconsin. The defendant asserts that when he entered pleas in the three prior Oklahoma cases, he was not aware of "the general range of penalties" he would face. Thus, the pleas were not knowing, intelli *65 gent, and voluntary, and the resulting convictions should have been collaterally attacked in Wisconsin.
¶ 128. This claim is distinct from the defendant's earlier claim of improper waiver of counsel in the same three prior Oklahoma cases. Even if the defendant properly waived counsel before entering his pleas in those cases, the pleas may not have been knowing, intelligent, and voluntary if he was unaware of "the potential punishment if convicted."[43] But see State v. Hahn, 2000 WI 118, 238 Wis. 2d 889, 618 N.W.2d 528, modified on reconsideration, 2001 WI 6, 241 Wis. 2d 85, 621 N.W.2d 902 (governing the bases of an offender's challenge at sentencing to a prior conviction).
¶ 129. The court of appeals erred in overlooking the defendant's second claim of ineffective assistance of Wisconsin counsel, and the majority opinion errs in ignoring the court of appeals' oversight.
¶ 130. If the defendant has arguably meritorious grounds for appeal, he must be permitted to bring that appeal and to be represented in the process. Under Anders, the court of appeals must independently and thoroughly review the record for any arguably meritorious grounds for appeal.[44]
*66 ¶ 131. Because the court of appeals employed an incorrect legal standard in reviewing one of the defendant's potential claims and overlooked another potential claim, it did not conduct a proper Anders review and thus did not validly accept the no-merit report. The case should be remanded to the court of appeals for a proper Anders review.[45] I agree with the defendant that the defendant's deadlines to file a notice of appeal or motion for postconviction relief should be reinstated.
¶ 132. For the reasons set forth, I dissent.
¶ 133. I am authorized to state that Justice ANN WALSH BRADLEY joins this dissent except for the discussion of the Tullberg opinion at ¶¶ 105-107.

 Majority op., ¶ 30.

 In State v. Kennedy, 2014 WI 132, 359 Wis. 2d 454, 856 N.W.2d 834, the court assumes but does not decide that Kennedy was under arrest when he was placed in the squad car. Kennedy, 2014 WI 132, ¶ 20. In any event, the court in Kennedy concludes that there was probable cause to arrest the defendant for driving under the influence. Kennedy, 2014 WI 132, ¶ 20. This satisfies the arrest requirement in State v. *52 Bohling, 173 Wis. 2d 529, 533-34 494 N.W.2d 399 (1993), abrogated on other grounds by Missouri v. McNeely, 133 S. Ct. 1552 (2013).

 Wisconsin Stat. § 885.235(lg) provides in part: "[E]vidence of the amount of alcohol in the person's blood at the time in question, as shown by chemical analysis of a sample of the person's blood ... is admissible ... if the sample was taken within 3 hours after the event to be proved." After the three-hour mark, expert testimony is required before the results of testing conducted on the blood sample can be admitted as evidence.

 State v. Tullberg, 2014 WI 134, ¶ 31, 359 Wis. 2d 421, 857 N.W.2d 120 (citing State v. Erickson, 2003 WI App 43, 260 Wis. 2d 279, 659 N.W.2d 407).

 State v. Bohling, 173 Wis. 2d 529, 533-34, 494 N.W.2d 399 (1993).

 See Bohling, 173 Wis. 2d at 534 n.1 ("Probable cause to arrest substitutes for the predicate act of lawful arrest.").

 See Tullberg, 2014 WI 134, ¶ 31.

 Majority op., ¶ 38 n.10.

 See Kennedy, 2014 WI 132, ¶ 17 (describing Erickson as a non-arrest case).

 Tullberg, 2014 WI 134, ¶¶ 37,40. Too often, the Tullberg opinion discusses probable cause without specifying whether it is referring to probable cause to search or probable cause to arrest.

 See Tullberg, 2014 WI 134, ¶ 55 ("When there is probable cause for a blood draw, as there is in the case at issue, there also is probable cause to arrest for operating while intoxicated."); Kennedy, 2014 WI 134, ¶ 17 ("[W]hether there is a 'clear indication that the blood draw will produce evidence of intoxication [ ]' in this case is also satisfied by the same facts that support a finding of probable cause to arrest."); Kennedy, 2014 WI 132, ¶ 18 ("Rather where law enforcement officers have probable cause to search a suspect's blood for evidence of a drunk-driving related violation or crime, they will necessarily satisfy the first two Bohling factors."). But see Kennedy, 2014 WI 132+, ¶ 18 n.7 ("While probable cause to search for evidence of a drunk-driving related violation or crime is sufficient to satisfy the first two factors of Bohling, the converse is not necessarily true. The fact of an arrest, or probable cause to arrest, for a drunk-driving related violation or crime alone will not permit an investigatory blood draw.").

 Majority op., ¶ 34 n.9.

 See Bohling, 173 Wis. 2d at 537.

 State v. Seibel, 163 Wis. 2d 164, 186, 471 N.W.2d 226 (1991) (Abrahamson, J., dissenting).

 Missouri v. McNeely, 133 S. Ct. 1552, 1561 (2013). See also majority op., ¶ 39 (quoting this passage in McNeely).

 U.S. Const, amend. IV ("The right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . .").

 Majority op., ¶ 46.

 Kennedy, 2014 WI 132, ¶ 34 n.13.

 Tullberg, 2014 WI 134, ¶ 31.

 See State v. Subdiaz-Osorio, 2014 WI 87, 357 Wis. 2d 41, 849 N.W.2d 748 (Abrahamson, C.J., dissenting).

 See McNeely, 133 S. Ct. at 1561.

 Tullberg, 2014 WI 134, ¶ 48 n.25. This footnote in Tullberg is based on the circuit court's comments, not on testimony of either a State or defense witness. This court has held that a "circuit court may not rely on its own personal observations of events not contained in the record." State v. Anson, 2005 WI 96, ¶ 33,282 Wis. 2d 629, 698 N.W.2d 776. For additional discussion of when a presiding judge can take judicial notice and when he or she is testifying as a witness, see State v. Novy, 2013 WI 23, ¶¶ 114-119, 346 Wis. 2d 289, 827 N.W.2d 610 (Abrahamson, C.J., concurring).

 The majority opinion's reliance in the instant case on a court of appeals case (State v. Reese, 2014 WI App 27, ¶ 22, 353 Wis. 2d 266, 844 N.W.2d 396) is not persuasive. See majority op., ¶ 58 n.16. The defendant in Reese has filed a petition for review, which is pending. On June 12,2014, the court issued an order holding the petition for review pending this court's disposition of the instant case, Kennedy, and Tullberg.

 See Anders v. California, 386 U.S. 738, 744 (1967).

 See Anders, 386 U.S. at 744.

 State ex rel. Flores v. State, 183 Wis. 2d 587, 626, 516 N.W.2d 362 (1994) (Abrahamson, C.J., concurring) (citing McCoy v. Court of Appeals, 486 U.S. 429, 439 (1988)).

 State v. Foster, No. 2011AP1673-CRMN, unpublished opinion & order at 1 (Wis. Ct. App. Dec. 10, 2012).

 See majority op., ¶ 9 (stating that "[t]he court of appeals reasonably exercised its discretion in finding no arguable merit to Foster's ineffective assistance of counsel claim"); ¶ 28 (stating that the erroneous exercise of discretion standard of review applies).

 State ex rel. Seibert v. Macht, 2001 WI 67, ¶ 14, 244 Wis. 2d 378, 627 N.W.2d 881 (internal quotation marks omitted).

 Howell v. Denomie, 2005 WI 81, ¶ 9, 282 Wis. 2d 130, 698 N.W.2d 621 ("[A]n appellate court decides whether an appeal is frivolous solely as a question of law.").

 Seibert, 244 Wis. 2d 378, ¶ 8.

 See majority op., ¶ 28.

 State v. Sutton, 2012 WI 23, ¶ ¶ 39-44, 48, 339 Wis. 2d 27, 810 N.W.2d 210 ("The court of appeals did not have to accept the no-merit report that outlined an unpreserved error at the circuit court. It is well-accepted appellate practice that an appellate court has discretion to reach the merits of an unpreserved issue." (Emphasis added.)).

 State v. Sutton, 2012 WI 23, ¶ 39, 339 Wis. 2d 27, 810 N.W.2d 210.

 See Sutton, 339 Wis. 2d 27, ¶ ¶ 49-50.

 State v. Foster, No. 2011AP1673-CRMN, unpublished opinion & order at 5 (Wis. Ct. App. Dec. 10, 2012).

 LeMere v. LeMere, 2003 WI 67, ¶ 14, 262 Wis. 2d 426, 663 N.W.2d 789.

 State v. Foster, No. 2011AP1673-CRMN, unpublished opinion & order at 5 (Wis. Ct. App. Dec. 10, 2012).

 State v. Foster, No. 2011AP1673-CRMN, unpublished opinion & order at 5 (Wis. Ct. App. Dec. 10, 2012) (citations omitted).

 State v. Ernst, 2005 WI 107, ¶ 10, 283 Wis. 2d 300, 699 N.W.2d 92 ("Whether a defendant knowingly, intelligently, and *64 voluntarily waived his Sixth Amendment right to counsel requires the application of constitutional principles to the facts.").

 See, e.g., State v. Hoppe, 2009 WI 41, ¶ 45, 317 Wis. 2d 161, 765 N.W.2d 794 (applying the two-step constitutional fact analysis to the question of whether a defendant's plea was entered knowingly, intelligently, and voluntarily); Ernst, 283 Wis. 2d 300, ¶ 10 (noting that "[w]hether a defendant knowingly, intelligently, and voluntarily waived his Sixth Amendment right to counsel requires the application of constitutional principles to the facts").

 LeMere, 262 Wis. 2d 426, ¶ 14.

 Wis. Stat. § 971.08(l)(a). This statute does not govern the defendant's pleas entered in Oklahoma, not Wisconsin. However, Wis. Stat. § 971.08 codifies the federal constitutional requirements for a knowing, intelligent, and voluntary plea, which do apply in Oklahoma. See State v. Brown, 2006 WI 100, ¶ 23, 293 Wis. 2d 594, 716 N.W.2d 906 ("The duties established in Wis. Stat. § 971.08 . .. are designed to ensure that a defendant's plea is knowing, intelligent, and voluntary. The faithful discharge of these duties is the best way we know for courts ... to avoid constitutional problems.").

 See Pennsylvania v. Finley, 481 U.S. 551 (1987) (because a defendant has no constitutional right to counsel in state postconviction proceedings, the Anders procedure does not *66 apply in such proceedings); State v. Mosley, 102 Wis. 2d 636, 662-63, 307 N.W.2d 200 (1981) (the Anders procedure applies only at the first level of appeal).

 See State v. Sutton, 2012 WI 23, ¶ 46, 339 Wis. 2d 27, 810 N.W.2d 210 (2012) (remanding to the court of appeals because "the court of appeals did not have a proper view of the law").