COURT OF APPEALS
DECISION
DATED AND FILED

May 24, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.  2022AP634-CR**

Cir. Ct. No. 2019CF215

**STATE OF WISCONSIN**

**IN COURT OF APPEALS**
**DISTRICT II**

---

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

WARNER E. SOLOMON,

   DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Racine County: WYNNE P. LAUFENBERG, Judge. *Affirmed*.

Before Gundrum. P.J., Neubauer and Lazar, JJ.

¶1   GUNDRUM, P.J.   Warner E. Solomon was pulled over for speeding, and this traffic stop led to the search of the vehicle he had been driving, his arrest, and ultimately his convictions for possession of a firearm by a convicted felon and possession of cocaine with intent to deliver.  After he was charged but before he

was convicted, he moved to suppress incriminating evidence flowing from the search of the vehicle during the traffic stop. Following an evidentiary hearing, the circuit court denied his motion. Solomon now asserts the court erred in doing so. For the following reasons, we disagree and affirm.

## Background

¶2 The arresting deputy was the only witness to testify at the hearing on Solomon's suppression motion. His relevant testimony is as follows.

¶3 At approximately noon on February 21, 2019, the deputy performed a traffic stop for speeding on the vehicle Solomon was driving and in which his brother occupied the front passenger seat. When the deputy reached Solomon's window, he "could immediately smell the strong odor of burnt marijuana emitting" from the interior of the vehicle. The deputy called for a "cover squad" so he could safely pull Solomon and his brother out of the vehicle and then search it by hand. While waiting for the cover squad to arrive, the deputy began writing up a speeding citation and checked Solomon's and his brother's backgrounds.

¶4 When the cover squad arrived, the deputy removed Solomon and his brother from the vehicle and began searching it, finding "a large sum of cash" in a Ziploc bag in the center console. The deputy halted the search, and a canine unit was requested because

> [a] lot of drug trafficking and movement operations they will put hidden compartments underneath the floorboards … to conceal narcotics and money. So they could be only accessed via remote or with a magnet and if we're just doing a hand search of the car, I may miss it and I might not be able to see it when a dog would be able to locate it.

When the canine unit arrived, the deputy informed the canine officer of the situation and asked him to have his canine search the interior of the vehicle.

¶5      The canine searched the interior, and the canine officer subsequently handed the deputy a backpack from the vehicle.  Searching the backpack, the deputy found crack and powdered cocaine, two firearms, a digital scale, and some money.  Solomon advised that the items belonged to him.

¶6      On cross-examination, the deputy acknowledged that after removing Solomon and his brother from the vehicle, he specifically noticed the odor of marijuana on the brother, who advised upon inquiry "that he had smoked marijuana an hour prior before [Solomon] picked him up while he was at work."  The deputy further testified, however, that when he subsequently "went to search the driver's compartment," "[t]he vehicle still smelled like marijuana."[1]  He acknowledged that the Ziploc bag with the large sum of cash also contained a title to a vehicle, but the deputy did not recall "what vehicle it came to or where it was from."

¶7      The deputy concurred that when he performed the background check early on in the traffic stop, he learned that Solomon and his brother "both had a lengthy criminal history of possession with intent."  At some point, the deputy also learned that the vehicle belonged to Solomon's cousin, not Solomon, and the deputy testified that it is "common practice" for persons trafficking drugs to use a vehicle that is not their own.[2]

---

[1]  During his search of the vehicle, the deputy also found ashes in the ashtray, "the center console where the cups were," and "on the floorboards of the driver's seat."

[2]  The deputy further noted the "time of day" he stopped Solomon—around noon—adding that drug trafficking "typically" occurs "during the day … during work hours when traffic is heavier."

¶8 The deputy believed Solomon likely was trafficking illegal drugs because of, among other reasons, the odor of marijuana, the fact that "two people [were] in the vehicle with prior criminal history for possession with intent to deliver," the fact that the vehicle did not belong to Solomon, and the "large sums of money which is common practice for selling narcotics." Aware that it is also "common practice" with drug trafficking to conceal illegal drugs in a hidden compartment in the vehicle, a canine unit was requested because "the canine could detail the car better than I am able to," and thus it would "not take 45 minutes to hand search or rip apart [the] car." The deputy "would have continued the search [himself] if there was no canine available, but we had one so why not use it as a tool at my disposal." The canine unit arrived approximately six minutes later.

¶9 On redirect examination, the deputy indicated that even before he found the large sum of money, he had planned on searching "[t]he entire vehicle" himself based upon the odor of marijuana he had observed emitting from the vehicle.

¶10 The circuit court denied Solomon's suppression motion, Solomon eventually pled and was sentenced, and he now appeals, challenging the denial of his motion.

### *Discussion*

¶11 Warrantless searches are generally prohibited by the Fourth Amendment. *State v. Matejka*, 2001 WI 5, ¶17, 241 Wis. 2d 52, 621 N.W.2d 891. An exception to this general rule, however—the "automobile exception"—allows for a warrantless search "[i]f a car is readily mobile and probable cause exists to

4

believe it contains contraband." ***Pennsylvania v. Labron***, 518 U.S. 938, 940 (1996).[3]

¶12     Probable cause is a question "based on probabilities; and, as a result, the facts faced by the officer 'need only be sufficient to lead a reasonable officer to believe that guilt is more than a possibility.'" ***County of Dane v. Sharpee***, 154 Wis. 2d 515, 518, 453 N.W.2d 508 (Ct. App. 1990) (citation omitted).  Probable cause "must be assessed on a case-by-case basis, looking at the totality of the circumstances." ***State v. Lange***, 2009 WI 49, ¶20, 317 Wis. 2d 383, 766 N.W.2d 551.  "The quantum of evidence required to establish probable cause to search is a 'fair probability' that contraband or evidence of a crime will be found in a particular place." ***State v. Erickson***, 2003 WI App 43, ¶14, 260 Wis. 2d 279, 659 N.W.2d 407 (citations omitted).  "The test is objective:  what a reasonable police officer would reasonably believe under the circumstances...." ***Id.*** (citation omitted).

¶13     When the relevant facts from a suppression hearing are undisputed, as in the case now before us, we review independently the application of constitutional principles to those facts.  ***State v. Delap***, 2018 WI 64, ¶¶26-28, 382 Wis. 2d 92, 913 N.W.2d 175; *see also* ***Lange***, 317 Wis. 2d 383, ¶20 ("When the facts are not disputed, whether probable cause to arrest exists in a given case is a question of law that this court determines independently of the circuit court and court of appeals but benefiting from their analyses.").

¶14     In ***State v. Secrist***, 224 Wis. 2d 201, 210, 589 N.W.2d 387 (1999), our state supreme court reiterated the vitality of the automobile exception, stating that

---

[3]  Solomon does not dispute that the vehicle he was driving was readily mobile.  Thus, the only issue on appeal is whether the deputy had probable cause to search the vehicle both by hand and with the aid of a drug-detecting dog.

"the warrantless search of an automobile is justified when a police officer has probable cause to believe that an automobile, found in a public place, contains evidence of the crime." Considering the specific facts of the case before it, which were very similar to the relevant facts of this case, the *Secrist* court concluded that "[t]he unmistakable odor of marijuana coming from an automobile provides probable cause for an officer to believe that the automobile contains evidence of a crime," and thus the officer may search the vehicle without a warrant. *Id.*[4] Based upon this precedent and the undisputed fact in this case that upon approaching Solomon's window, the deputy "immediately smell[ed] the strong odor of burnt marijuana emitting" from inside the vehicle, we conclude that probable cause existed to search the vehicle and no warrant was necessary to do so.

¶15 Attempting to sidestep the automobile exception and *Secrist*, Solomon contends that because the deputy made a "link" "between the marijuana and [Solomon's brother], and a search of both Solomon and his brother yielded nothing," the deputy should not thereafter have proceeded to search the vehicle. He also contends that "[w]hen [the deputy] *stopped* searching the vehicle he had no additional information to supply the requisite reasonable suspicion to lawfully extend the stop to wait for a canine officer to arrive." (Emphasis added.) Solomon's contentions do not carry the day.

¶16 The deputy testified that upon approaching Solomon's window, he "immediately smell[ed] the strong odor of burnt marijuana emitting" from inside

---

[4] The *Secrist* court added that this rule "is consistent with rulings in other jurisdictions" and then gave as its specific example the case of *State v. Judge*, 645 A.2d 1224 (N.J. 1994), in which the court concluded that the odor of "burnt" marijuana created probable cause to search the vehicle. *State v. Secrist*, 224 Wis. 2d 201, 210-11, 589 N.W.2d 387 (1999). In the case now before us, the deputy "immediately smell[ed] the strong odor of *burnt* marijuana emitting" from inside the vehicle. (Emphasis added.)

the vehicle. Under *Secrist* and the "automobile exception," based upon this odor alone, the deputy had probable cause and could lawfully search the vehicle. *See Secrist*, 224 Wis. 2d at 210. Considering the marijuana odor subsequently observed on the brother's person and the brother's explanation for that odor, the deputy could have concluded there was no other likely source of the marijuana odor he originally had observed emitting from the interior of the vehicle. However, he was not obligated to draw that "innocent" conclusion, *see State v. Nieves*, 2007 WI App 189, ¶14, 304 Wis. 2d 182, 738 N.W.2d 125 ("[A]n officer is not required to draw a reasonable inference that favors innocence when there also is a reasonable inference that favors probable cause."), and thus, the deputy still had probable cause to believe the automobile contained "contraband or evidence of a crime," *see Erickson*, 260 Wis. 2d 279, ¶14. This is especially so here since the deputy had observed the odor emitting out of *Solomon's* window, which was on the other side of the vehicle from where the brother had been seated.

¶17 Furthermore, the record indicates that before he began searching the vehicle, the deputy had already checked Solomon's and his brother's background and was aware that both men had prior convictions for the possession of illegal drugs with intent to deliver. *See State v. Anderson*, 2019 WI 97, ¶51, 389 Wis. 2d 106, 935 N.W.2d 285 (indicating that "evidence of prior convictions or arrests can be taken into account" in the analysis as to whether probable cause existed). Additionally, the deputy testified that even after Solomon and his brother had exited the vehicle, it "still smelled like marijuana *when I went to search* the driver's compartment." (Emphasis added.) Because the deputy further testified that his search of the vehicle "began" with the driver's compartment, the testimony temporally indicates the deputy still noticed the smell inside the vehicle as he was about to begin but before he actually had begun to search it.

¶18    Soon after the deputy began his lawful search of the vehicle, he found a Ziploc bag with a "large sum of cash" in the center console.[5]  Again, at this point, the deputy had already learned that both Solomon and his brother had prior convictions for the possession of illegal drugs with intent to deliver.  The deputy's discovery of the money contributed to his belief that there was a "'fair probability' that contraband or evidence of a crime" would be found in the vehicle, which is a belief any reasonable law enforcement officer would have had under the circumstances.  *See Erickson*, 260 Wis. 2d 279, ¶14 (citations omitted).

¶19    Aware that it is "common practice" for drug traffickers to conceal illegal drugs in a hidden compartment in the vehicle, the deputy then paused his hand search to secure the assistance of a trained drug-detecting dog, which could more quickly and efficiently continue the search.  As he testified, "if we're just doing a hand search of the car, I may miss [a hidden compartment] and I might not be able to see it when a dog would be able to locate it."  "[T]he canine could detail the car better than I am able to," the deputy further explained, and thus it would "not take 45 minutes to hand search or rip apart [the] car."  He added that he "would have continued the search [himself] if there was no canine available, but we had one so why not use it as a tool at my disposal."  Indeed, why not.  The deputy now not only

---

[5] Solomon contends, in one sentence, that the fact that "a title to a vehicle" was also inside the Ziploc bag "bel[ies] the notion that [the money] was related to narcotics or drug-trafficking."  Because Solomon fails to develop this point, we do not consider it.  *See Clean Wis., Inc. v. PSC*, 2005 WI 93, ¶180 n.40, 282 Wis. 2d 250, 700 N.W.2d 768 ("We will not address undeveloped arguments.").  That said, we do not see how the presence of the title would dispel suspicion of illegal drug trafficking.  First, there was no evidence presented as to any details related to the title, such as what vehicle it may have related to.  Second, Solomon fails to identify, and we are unable to find, any indication in the record that the money and title were connected, and we do not even see how this would obviously be so.  If Solomon or his brother had just purchased a vehicle, so that they had the title to it, they would have just *given away* a large sum of cash.  And if they had just sold a vehicle, and thus received a large sum of cash, they would have *given away* the title.  Considering the totality of the circumstances, we see nothing about the presence of the vehicle title in the Ziploc bag that would dispel this deputy's—or any reasonable deputy's—concern that the money in the bag was connected to illegal drug trafficking.

had probable cause to believe evidence of the possession of illegal drugs was in the vehicle, but additionally had probable cause to believe evidence of the trafficking of illegal drugs was in the vehicle, and the deputy was aware that drug traffickers "common[ly]" conceal such evidence in hidden compartments. The mission to locate evidence of illegal drugs continued. The mission to also locate evidence of illegal drug trafficking was added. The deputy did not conclude his search prior to the discovery of the incriminating backpack. Rather, the undisputed evidence indicates the search was at all times ongoing, and the deputy's brief pause to await the arrival of the drug-detecting dog to more quickly and efficiently conduct the remainder of the search did not undermine its constitutionality in any way.

¶20 To conclude, once the deputy detected the odor of burnt marijuana, the mission here lawfully expanded from issuing a speeding ticket to finding contraband or evidence of a crime, and from the start of his search, the deputy possessed probable cause to believe such was in the vehicle. When the deputy also discovered that Solomon was driving a vehicle he did not own, which the deputy indicated is common with drug traffickers, that Solomon and his brother had prior criminal convictions for possession of illegal drugs with intent to deliver, and that there was a "large sum of money" in a Ziploc bag in the center console, he had heightened concern and additional probable cause that the vehicle not only contained evidence of the possession of illegal drugs, but that it also contained evidence of the trafficking of illegal drugs. His awareness that illegal drug trafficking often involves hidden compartments then reasonably led him to pursue the assistance of the trained drug-detection dog. The deputy's decision to continue his search with the aid of a drug dog was entirely reasonable and supported by probable cause. Indeed, the deputy's conduct and search was at all times reasonable and constitutional.

*By the Court.*—Judgment affirmed.

Not recommended for publication in the official reports.