STATE of Wisconsin, Plaintiff-Appellant,

v.

Christopher M. REPENSHEK, Defendant-Respondent.†

Court of Appeals

*No. 03–3089–CR. Submitted on briefs August 5, 2004.—Decided November 18, 2004.*

2004 WI App 229

(Also reported in 691 N.W.2d 369.)

† Petition to review denied 4-6-2005.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *James M. Freimuth*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Stephen E. Mays* of *Mays Law Office, LLC*, Madison.

Before Dykman, Vergeront and Lundsten, JJ.

¶ 1. LUNDSTEN, J. Christopher Repenshek has pending against him several charges, including homicide by intoxicated use of a vehicle, arising out of a head-on vehicle collision. The State appeals a pretrial order suppressing blood-alcohol evidence obtained pursuant to a warrantless blood draw. The State argues that the circuit court erroneously concluded that police lacked reasonable suspicion to believe Repenshek's blood contained evidence of a crime, that is, that Repenshek's blood contained evidence that Repenshek was impaired by alcohol when the pickup truck he was driving crossed the center line and collided head-on with an oncoming pickup truck.

¶ 2. Repenshek disputes the State's reasonable suspicion argument and offers alternative reasons for affirming the circuit court's suppression ruling. Consequently, this case presents four questions: (1) Was Repenshek's arrest illegal because the officer arrested him for a nonexistent crime? (2) Was the blood draw illegal under *State v. Bohling*, 173 Wis. 2d 529, 494 N.W.2d 399 (1993), because Repenshek's arrest was not

for a "drunk-driving related violation or crime"? (3) Does WIS. STAT. § 343.303[1] prohibit consideration of a refusal to submit to a preliminary breath test when police lack "probable cause" within the meaning of that statute? and (4) Did police possess reasonable suspicion that Repenshek's blood contained evidence of a crime? We resolve each of these questions against Repenshek and, therefore, reverse the suppression order of the circuit court.

## Background

¶ 3. The pending charges against Repenshek are based on a traffic collision that occurred shortly after 4:00 p.m. on a two-lane highway. Repenshek was driving a pickup truck that clipped the back end of a second pickup truck. Repenshek's truck struck this second truck as the second truck slowed to make a right-hand turn. After striking the second truck, Repenshek's truck crossed the center line into oncoming traffic and collided head-on with a third pickup truck driven by Russell Vossekuil. Vossekuil died from injuries sustained in the collision. In addition, a passenger in Repenshek's truck was injured. Two homicide charges pending against Repenshek relate to Vossekuil's death. An injury charge relates to Repenshek's passenger.

¶ 4. An investigating officer testified at the suppression hearing and gave the following testimony. Officers were dispatched to the accident at about 4:20 p.m. and observed the wreckage of a two-vehicle, head-on crash. The area of the accident is a no passing zone. On the scene, the officer saw emergency medical personnel performing CPR on the driver of one of the trucks involved in the head-on collision.

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version, unless otherwise noted.

¶ 5. The officer spoke with an eyewitness who was not involved in the accident. This witness said he was in his own vehicle, stopped at a stop sign at the intersection, when he saw Repenshek's white truck, which was traveling south, swerve into the northbound lane. The witness thought the white truck possibly did this to avoid a car that had pulled out from the stop sign. The witness said the white truck then collided with the blue truck.

¶ 6. The officer spoke with Repenshek and Repenshek admitted he was the driver of the white truck that was involved in the head-on crash. Repenshek said he had been driving behind another southbound truck when that truck's driver hit the brakes. Repenshek told the officer he swerved to the left to avoid a collision with the braking truck, but still "clipped" the left rear bumper of that truck. Repenshek said this sent him into the northbound lane and into the path of the blue truck.

¶ 7. The officer asked Repenshek if he would submit to a "preliminary breath test" and Repenshek refused, saying he had a "prior OWI" and that the PBT "got him in trouble the last time." Repenshek said he would cooperate as much as possible, but would not take the PBT or consent to a blood draw.

¶ 8. The officer testified that he arrested Repenshek for "causing great bodily harm by reckless driving." The complaint indicates that Repenshek was taken to a hospital, where police directed hospital personnel to draw a sample of Repenshek's blood. The police had no warrant, and Repenshek did not voluntarily consent to this blood draw. A test of Repenshek's blood, drawn about two and a half hours after the collision, revealed a blood-alcohol content of .051%.

## Discussion

*Whether Repenshek's Arrest was Illegal Because the Officer Arrested Repenshek for a Nonexistent Crime*

¶ 9. Repenshek argues that evidence obtained from the blood draw must be suppressed as the fruit of an illegal arrest. Repenshek does not dispute that police had probable cause to arrest him for reckless driving, contrary to Wis. Stat. § 346.62(4) (1999–2000). Instead, he argues that his arrest was illegal because the arresting officer testified that Repenshek was arrested for "causing great bodily harm by reckless driving," a crime Repenshek asserts does not exist. However, even assuming the officer was subjectively motivated to arrest Repenshek for a nonexistent crime, Repenshek's arrest was nonetheless legal because police had probable cause to arrest him for an actual crime.

¶ 10. Generally speaking, the legality of an arrest does not depend on whether the arresting officer articulates the correct legal basis for the arrest. Stated differently, in general, the legality of an arrest does not depend on the subjective motivation of the arresting officer. *See State v. Kiekhefer*, 212 Wis. 2d 460, 484, 569 N.W.2d 316 (Ct. App. 1997) ("The probable cause standard is an objective one; the officers' subjective state of mind is irrelevant."); *see also Whren v. United States*, 517 U.S. 806, 813 (1996) (the existence of probable cause is determined objectively without regard to the "actual motivations" or "[s]ubjective intentions" of the arresting officer).

¶ 11. More specifically, even when an officer acts under a mistaken understanding of the crime commit-

ted, an objective test is used to determine the legality of the arrest. Research provided by the State and our own research suggests that this rule is uniformly accepted in both state and federal courts. The rule was aptly summarized in a Tennessee decision:

> [A]n arrest is not rendered unlawful by the fact that an officer who has authority to make an arrest for a particular offense erroneously states he is making an arrest for some other offense, or even for a cause which is not in fact an offense, or states the offense inaccurately.

*State v. Robinson*, 622 S.W.2d 62, 68 (Tenn. Crim. App. 1980); *see also Lauro v. City of New York*, 39 F. Supp. 2d 351, 361 (S.D.N.Y. 1999) (even if an officer fails to accurately identify an offense, an arrest is lawful if probable cause existed to arrest the suspect for a crime for which warrantless arrests are permitted), *rev'd and remanded on other grounds sub nom., Lauro v. Charles,* 219 F.3d 202 (2d Cir. 2000); *Bell v. United States,* 254 F.2d 82, 86–87 (D.C. Cir. 1958) (arrests lawful even though defendants were arrested for nonexistent crime of "housebreaking"); *State v. Sassen,* 484 N.W.2d 469, 472 (Neb. 1992) ("The officers need not state the specific crime for which a defendant is arrested in order to effectuate a valid arrest."); *see generally* 1 WAYNE R. LaFAVE, SEARCH AND SEIZURE § 1.4(d), at 109–15 & n.28 (3d ed. 1996).

¶ 12. Accordingly, even assuming that the officer in this case arrested Repenshek for a crime that does not exist, that fact does not make Repenshek's arrest illegal. Rather, the pertinent question is whether the arrest was supported by probable cause to believe Repenshek committed a crime. *See State v. Cash,* 2004 WI App 63, ¶ 24, 271 Wis. 2d 451, 677 N.W.2d 709 ("The

objective facts before the police officer need only lead to the conclusion that guilt is more than a possibility."), *review denied,* 2004 WI 114, 273 Wis. 2d 657, 684 N.W.2d 138 (No. 03–1614–CR). Because Repenshek does not dispute that the officer had probable cause to arrest him for reckless driving, as defined by Wis. Stat. § 346.62(4), we reject Repenshek's illegal arrest argument.

### *Whether the Blood Draw Was Illegal Under* Bohling *Because Repenshek's Arrest Was Not for a "Drunk-Driving Related Violation or Crime"*

¶ 13. Repenshek argues that his blood alcohol test result must be suppressed under the first prong of the four-pronged *Bohling* test. Under the first prong of this test, blood must be "taken to obtain evidence of intoxication from a person lawfully arrested for a *drunk-driving related violation or crime.*" *Bohling,* 173 Wis. 2d at 534 (emphasis added). Repenshek argues that he was arrested for a *non*-drunk-driving crime, namely reckless driving, and, therefore, the first prong of *Bohling* is not satisfied. We assume, without deciding, that Repenshek was arrested for a non-drunk-driving related violation or crime,[2] but reject Repenshek's argument because it is based on a misreading of *Bohling.* As explained below, the blood draw in this case was permissible under *State v. Seibel,* 163 Wis. 2d 164, 471 N.W.2d 226 (1991), and Repenshek's argument hinges on the erroneous proposition that the supreme court in *Bohling* partly overturned *Seibel.* Accordingly, we begin our discussion with *Seibel.*

---

[2] The State argues that, under the facts in this case, Repenshek *was* arrested for a drunk-driving *related* offense. We do not address that argument.

¶ 14. *Seibel* involved an arrest, supported by probable cause, for a non-drunk-driving offense—homicide by negligent operation of a motor vehicle—and a subsequent warrantless non-consent blood draw. *Seibel*, 163 Wis. 2d at 168–70.[3] Seibel moved to suppress the results of the blood draw. Pertinent here, although police properly arrested Seibel for homicide by negligent operation of a motor vehicle, the police possessed only *reasonable suspicion* that Seibel's blood contained alcohol. That is, the court assumed that the police did not have probable cause to arrest Seibel for a drunk driving offense. Regarding reasonable suspicion supporting a blood draw, the *Seibel* court explained:

> The record shows that the police possessed a reasonable suspicion that [Seibel's] blood contained evidence of the crime of homicide by negligent operation of a motor vehicle, to wit, evidence that [Seibel] had imbibed enough to lessen or impair his ability to exercise ordinary care. Such evidence would constitute proof of criminal negligence even if it did not show that [Seibel] was legally intoxicated.

*Id.* at 180–81.

---

[3] In *State v. Seibel*, 163 Wis. 2d 164, 471 N.W.2d 226 (1991), the officer in charge of the investigation determined that the defendant should be arrested for homicide by negligent use of a motor vehicle and directed a different officer, through dispatch, to proceed to the hospital and arrest Seibel. This second officer, who had not been present at the accident scene, mistakenly informed Seibel that he was under arrest for operating a motor vehicle while under the influence of intoxicants. *Id.* at 168–69. The supreme court notes the mistake, but then analyzes Seibel's situation as if he had been properly arrested for the non-drunk-driving offense of homicide by negligent use of a motor vehicle. *Id.* at 180–83.

¶ 15. The *Seibel* court explained that one question in the case was "whether the standard for drawing a blood sample in a search incident to an arrest is 'reasonable suspicion' or [instead] 'probable cause' that the defendant's blood contains evidence of a crime." *Id.* at 166. The court concluded that reasonable suspicion is sufficient. *Id.* Because Seibel's arrest was supported by probable cause to believe he committed a non-drunk-driving offense, the *Seibel* court effectively held as follows: blood may be drawn in a search incident to a lawful arrest for a non-drunk-driving offense if the police reasonably suspect that the defendant's blood contains evidence of a crime. Repenshek argues that this holding is no longer good law.

¶ 16. Repenshek relies on the supreme court's subsequent decision in *Bohling*. In *Bohling*, the supreme court held that evidence resulting from a warrantless nonconsensual blood draw, taken at the direction of a law enforcement officer, is admissible under the following circumstances:

> (1) the blood draw is taken to obtain evidence of intoxication from a person lawfully arrested for a drunk-driving related violation or crime, (2) there is a clear indication that the blood draw will produce evidence of intoxication, (3) the method used to take the blood sample is a reasonable one and performed in a reasonable manner, and (4) the arrestee presents no reasonable objection to the blood draw.

*Bohling*, 173 Wis. 2d at 534 (footnote omitted).[4] Repenshek points to the first prong of *Bohling*. He argues

[4] We note that although the first *Bohling* prong refers to an arrest, an actual arrest need not occur. Rather, "in the absence of an arrest, probable cause to believe blood currently contains evidence of a drunk-driving-related violation or crime satisfies the first prong of *Bohling*." *State v. Erickson*, 2003 WI App 43,

that even though *Seibel* approved of a warrantless blood draw following an arrest for a *non*-drunk-driving offense when police have reasonable suspicion that the defendant's blood contains evidence of a crime, that part of *Seibel* is no longer good law because the first prong of the *Bohling* test now requires that the arrest be for a "drunk-driving related violation or crime." We are not persuaded.

¶ 17. The supreme court in *Bohling* did not purport to set forth a test that covers all possible situations. Rather, the court defined one situation in which police may permissibly draw blood without a warrant, without consent, and without probable cause that the blood contains evidence of a crime. The *Bohling* court did *not* say that a warrantless non-consent blood draw is *only* legal if the four *Bohling* prongs are met. In short, nothing in *Bohling* overrules the *Seibel* holding that "blood may be drawn in a search incident to an arrest [for a non-drunk-driving offense] if the police reasonably suspect that the defendant's blood contains evidence of a crime." *Seibel*, 163 Wis. 2d at 166.

¶ 18. Accordingly, we reject Repenshek's argument that his blood test result must be suppressed because he was not arrested for a drunk-driving related violation or crime.

*Whether Wis. Stat. § 343.303 Prohibits Consideration of a Refusal to Submit to a Preliminary Breath Test When Police Lack "Probable Cause" Within the Meaning of that Statute*

¶ 19. Repenshek argues that his refusal to take

¶ 12, 260 Wis. 2d 279, 659 N.W.2d 407, *review denied*, 2003 WI 32, 260 Wis. 2d 752, 661 N.W.2d 101 (No. 01–3367–CR).

the preliminary breath test (PBT) may not be considered in assessing reasonable suspicion because the officer violated WIS. STAT. § 343.303 when he asked Repenshek to submit to the PBT. For purposes of addressing this argument, we assume that the officer was not authorized by § 343.303 to ask Repenshek to submit to a PBT because the officer did not possess the requisite level of "probable cause" required by that statute. Still, we reject Repenshek's argument because it is based on a misapprehension of the statute and its effect.

¶ 20. WISCONSIN STAT. § 343.303 authorizes police to request that a person submit to a PBT if police have "probable cause to believe" the person committed one or more specified crimes involving the intoxicated use of a vehicle or firearm. That statute provides, in pertinent part:

> If a law enforcement officer has probable cause to believe that the person is violating or has violated s. 346.63(1) or (2m) or a local ordinance in conformity therewith, or s. 346.63(2) or (6) or 940.25 or s. 940.09 where the offense involved the use of a vehicle, . . . the officer, prior to an arrest, may request the person to provide a sample of his or her breath for a preliminary breath screening test using a device approved by the department for this purpose. The result of this preliminary breath screening test may be used by the law enforcement officer for the purpose of deciding whether or not the person shall be arrested for a violation of s. 346.63(1), (2m), (5) or (7) or a local ordinance in conformity therewith, or s. 346.63(2) or (6), 940.09(1) or 940.25 and whether or not to require or request chemical tests as authorized under s. 343.305(3). The result of the preliminary breath screening test shall not be admissible in any action or proceeding except to show probable cause for an arrest, if the arrest is

challenged, or to prove that a chemical test was properly required or requested of a person under s. 343.305(3).

Relying on § 343.303, as interpreted in *County of Jefferson v. Renz*, 231 Wis. 2d 293, 603 N.W.2d 541 (1999), Repenshek argues that an officer may not request that a suspect take a PBT unless the officer already possesses, in the words of the *Renz* court, "a quantum of proof greater than the reasonable suspicion necessary to justify an investigative stop, . . . but less than the level of proof required to establish probable cause for arrest." *Id.* at 316. Repenshek argues that considering his refusal to take the PBT when assessing whether there was reasonable suspicion to believe there was alcohol in his blood is impermissible because, under § 343.303, an officer needed *more* than reasonable suspicion to ask him to submit to a PBT in the first place. Repenshek's argument is unavailing because § 343.303 does not authorize the remedy he seeks.

¶ 21. The supreme court's *Renz* decision does not address the issue presented here. Instead, the issue in *Renz* was whether, pursuant to Wis. Stat. § 343.303, "a law enforcement officer is required to have probable cause for arrest before asking a suspect to submit to a PBT." *Renz*, 231 Wis. 2d at 295. The supreme court assumed, without addressing the topic, that if an officer does not possess the level of "probable cause" required by § 343.303, the result of a PBT may not be used to support an arrest for driving while intoxicated or be used to require further testing. The supreme court's assumption apparently flows from the following language in the statute: "The result of this preliminary breath screening test may be used by the law enforcement officer for the purpose of deciding whether or not the person shall be arrested for a violation of [specified

crimes involving the intoxicated use of a vehicle or firearm] and whether or not to require or request [a blood, breath, or urine test] as authorized under s. 343.305(3)." That is, because § 343.303 specifies that, when a PBT is taken in compliance with the statute, a PBT result may be used by an officer to decide whether to arrest a person for specified intoxication crimes or to decide whether to require further testing, the *Renz* court made the reasonable, albeit unexpressed, assumption that the legislature was directing that the result of a PBT not taken in compliance with § 343.303 could not be used for these purposes.

¶ 22. What matters here is that neither *Renz* nor WIS. STAT. § 343.303 addresses what use may be made of a *refusal* to take a PBT when an officer does not have the requisite probable cause to request a PBT under § 343.303. This distinction is key because the topic here is suppression. Repenshek seeks suppression of the results of his blood test, not based on an alleged constitutional violation, but based on an alleged violation of a statute, namely § 343.303. That Repenshek does not allege a constitutional violation is not surprising. The officer in this case no more violated the constitution when he requested that Repenshek submit to a PBT than if the officer had requested Repenshek's consent to the search of his truck. From a constitutional standpoint, there is typically no harm in asking.

¶ 23. Thus, we return to Repenshek's argument that the blood test results should be suppressed because the officer obtained the blood sample as a result of a violation of WIS. STAT. § 343.303. It is a well-settled principle of search and seizure law that suppression is only required when evidence has been obtained in

violation of an applicable constitutional right or when a statute specifies suppression as a remedy for a violation of the statute:

> Suppression of evidence is "only required when evidence has been obtained in violation of a defendant's constitutional rights, or if a statute specifically provides for the suppression remedy." *State v. Raflik*, 2001 WI 129, ¶ 15, 248 Wis. 2d 593, 636 N.W.2d 690 (citations omitted). For example, a violation of the implied consent law does not render otherwise legally obtained evidence inadmissible. *See State v. Zielke*, 137 Wis. 2d 39, 51–52, 403 N.W.2d 427 (1987).

*State v. Keith*, 2003 WI App 47, ¶ 8, 260 Wis. 2d 592, 659 N.W.2d 403, *review denied*, 2003 WI 32, 260 Wis. 2d 753, 661 N.W.2d 101 (No. 02–0583–CR).

¶ 24. Repenshek does not argue that any language in Wis. Stat. § 343.303 limits the use of a *refusal* to submit to a PBT. Plainly, there is no such language. Rather, the statute deals only with what use may be made of a test *result*. Repenshek might respond that we should infer that the legislature meant to include a suppression remedy when a non-complying request results in a refusal. But, to do that, we would have to write language into the statute and, more importantly, ignore binding law that requires that the remedy sought for statutory violation be expressed in the relevant statute. *See State v. Raflik*, 2001 WI 129, ¶¶ 14–15, 248 Wis. 2d 593, 636 N.W.2d 690 (failure to comply with Wis. Stat. § 968.12(3)(d) by failing to contemporaneously record a telephonic search warrant does not require suppression because the statute does not specify that remedy).

¶ 25. Key to understanding our analysis is understanding that Wis. Stat. § 343.303 does not contain a general prohibition on police requesting a PBT. Rather,

the statute only imposes a limitation on the use of a PBT result in a particular situation, that is, where the requesting officer wants to use the PBT *result* to support a drunk driving arrest or to support a non-consent blood draw. For example, do police officers act illegally when they "bust" a teenage drinking party and ask attendees to take PBTs? This is a routine procedure and the results are used to make a preliminary determination about which teens may have been drinking. We can discern no reasonable argument that police are acting illegally because they do not, under § 343.303, have "probable cause" to believe the teens have violated a drunk driving statute.

¶ 26. Accordingly, we conclude that WIS. STAT. § 343.303 does not prohibit the consideration of Repenshek's refusal to submit to a PBT for purposes of determining whether Repenshek's blood draw was supported by reasonable suspicion.

*Whether the Police Possessed Reasonable Suspicion that Repenshek's Blood Contained Evidence of a Crime*

¶ 27. The question remains whether police in this case possessed reasonable suspicion to believe that Repenshek's blood contained evidence of a crime. More specifically, did police know facts constituting reasonable suspicion to believe that Repenshek's blood contained evidence that Repenshek was impaired because of alcohol consumption? Among other things, if alcohol was found in Repenshek's blood, that finding would support the charge of reckless driving, causing great bodily harm under WIS. STAT. § 346.62(4). The second element of this crime "requires that the defendant operated a vehicle in a manner constituting criminal

negligence." Wis JI—Criminal 2654. As the supreme court explained in *Seibel*: "[E]vidence that the defendant had imbibed enough [alcohol] to lessen or impair his ability to exercise ordinary care . . . would constitute proof of criminal negligence even if it did not show that the defendant was legally intoxicated." *Seibel*, 163 Wis. 2d at 180–81.

¶ 28. The circuit court concluded that the officer did not have reasonable suspicion to believe that Repenshek's blood contained evidence of intoxication. We disagree. "The question of what constitutes reasonable suspicion is a common sense test. Under all the facts and circumstances present, what would a reasonable police officer reasonably suspect in light of his or her training and experience?" *State v. Jackson*, 147 Wis. 2d 824, 834, 434 N.W.2d 386 (1989). Whether facts constitute reasonable suspicion is a question of law, which we review without deference to the circuit court. *State v. Williams*, 2001 WI 21, ¶ 18, 241 Wis. 2d 631, 623 N.W.2d 106. We conclude that the officer possessed reasonable suspicion to believe that Repenshek's blood contained evidence that Repenshek had been drinking and that his ability to drive safely was impaired by alcohol consumption.

¶ 29. First, the officer knew that Repenshek had failed to stop his truck in his lane of traffic and had, instead, struck the truck ahead of him, crossed the center line, and collided head-on with an oncoming truck. Repenshek does not dispute the conclusion that the officer possessed sufficient facts to support probable cause to believe that Repenshek caused the collision by operating his vehicle in a criminally negligent manner. Second, Repenshek was asked if he would submit to a

PBT and Repenshek refused, saying he had a prior "OWI" and a PBT "got him in trouble the last time."[5]

¶ 30. Of course, there may be an innocent explanation for Repenshek's refusal to take the PBT. For example, he may think the test is unreliable. However, we "recognize . . . that conduct which has innocent explanations may also give rise to a reasonable suspicion of criminal activity." *State v. Young*, 212 Wis. 2d 417, 430, 569 N.W.2d 84 (Ct. App. 1997). In this case, it is self-evident that a reasonable officer who knows that Repenshek has likely caused a serious vehicle accident by the negligent operation of his truck, and who knows that Repenshek has refused to cooperate with a test designed to detect alcohol consumption, would reasonably suspect that Repenshek was refusing to take the PBT to conceal the fact that he had been drinking alcohol. Stated in converse, it is hard to conceive how a reasonable officer faced with these facts would not suspect that Repenshek was trying to conceal alcohol consumption. *Cf. State v. Babbitt*, 188 Wis. 2d 349, 359–60, 363, 525 N.W.2d 102 (Ct. App. 1994) (refusal to take a field sobriety test is evidence of consciousness of guilt and may be used as a factor in assessing probable cause).

¶ 31. Accordingly, we conclude that Repenshek's blood draw was supported by reasonable suspicion.

---

[5] Although the circuit court did not make express findings of fact, Repenshek does not suggest that the facts we rely on are contested, and our review of the suppression hearing reveals no reason to suppose the circuit court did not accept as true the officer's testimony with respect to the facts we rely on here.

## Conclusion

¶ 32. For the reasons set forth above, we reverse the order suppressing the test results of blood drawn from Repenshek. We remand for further proceedings consistent with this opinion.

*By the Court.*—Order reversed and cause remanded with directions.

¶ 33. DYKMAN, J. (*concurring*). WISCONSIN STAT. § 343.303 (2001–02)[1] provides in pertinent part:

> If a law enforcement officer has probable cause to believe that the person is violating or has violated [statutes or ordinances prohibiting driving while intoxicated] . . . the officer, prior to an arrest, may request the person to provide a sample of his or her breath . . . .

¶ 34. By using the word "if," the legislature has predicated an officer's use of a preliminary breath test (PBT) on probable cause. Without probable cause, an officer may not request a person to provide a sample of his or her breath.

¶ 35. I therefore cannot agree with the majority's analysis of WIS. STAT. § 343.303 in ¶ 25 of its opinion. The problematic sentence reads in part: "WIS. STAT. § 343.303 does not contain a general prohibition on police requesting a PBT." Majority at ¶ 25. I am not sure what the majority means by "general prohibition," and I do not see the difference between a "prohibition" and a "general prohibition." But using "prohibition" with or without the modifier "general" still means that something is prohibited.

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

¶ 36. WISCONSIN STAT. § 343.303 prohibits law enforcement officers from requesting breath samples from motorists unless the officer has probable cause to believe that a motor vehicle driver is or has been operating while intoxicated. The statute is inapplicable by its terms to teenage drinking parties unless a teenager is operating a motor vehicle. There is no need for the majority to base its decision on a concern that the police need PBTs to break up teenage drinking parties. Police have and continue to have the right to use PBTs for any lawful purpose.

¶ 37. Still, I reach the same conclusion as does the majority. I agree with its analysis of search and seizure law found in ¶ 23 of its opinion. Suppression of evidence is only required if obtained in violation of an applicable constitutional right, or where a statute provides suppression as a remedy for violating the statute. Repenshek does not assert that either constitution requires that the PBT test results be suppressed, or that any statute so requires. I conclude that though the investigating officer improperly requested Repenshek to take a PBT, suppression of Repenshek's statement that he refused to take the test is not required. Accordingly, I respectfully concur.