**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**January 19, 2022**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2020AP1465**

Cir. Ct. No. **2020TR561**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS**
**DISTRICT III**

IN THE MATTER OF THE REFUSAL OF BRIAN M. STEINERT:

FOREST COUNTY,

    PLAINTIFF-RESPONDENT,

V.

BRIAN M. STEINERT,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Forest County: LEON D. STENZ, Judge. *Affirmed*.

¶1    STARK, P.J.[1]  Brian Steinert appeals a judgment revoking his operating privilege as a result of the circuit court's determination that he

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

unreasonably refused to submit to an evidentiary chemical test of his blood. *See* WIS. STAT. § 343.305(10)(a). Steinert argues that his refusal was reasonable because he was not lawfully placed under arrest. Specifically, he contends that the officers lacked probable cause to arrest him for possession of drug paraphernalia at the scene of the traffic stop. He further contends that the officers violated WIS. STAT. § 968.24 by transporting him outside the vicinity of the stop to perform field sobriety tests, without probable cause to do so.

¶2 Forest County ("the County") concedes that the officers lacked probable cause to arrest Steinert for possession of drug paraphernalia. We nevertheless conclude Steinert was lawfully placed under arrest at the scene of the traffic stop because the officers had probable cause to believe that he had operated a motor vehicle with a detectable amount of a restricted controlled substance in his blood, contrary to WIS. STAT. § 346.63(1)(am). Under these circumstances, Steinert's transportation to another location to perform field sobriety tests did not violate WIS. STAT. § 968.24. We therefore reject Steinert's claim that his refusal was reasonable, and we affirm the circuit court's judgment revoking his operating privilege.

## BACKGROUND

¶3 On June 9, 2020, Steinert was issued a notice of intent to revoke his operating privilege, based on his refusal to submit to a chemical test of his blood upon request by a law enforcement officer. *See* WIS. STAT. § 343.305(3)(a), (9)(a). Steinert timely requested a refusal hearing, which took place on July 27.

¶4 During the refusal hearing, Forest County Sheriff's Deputy Connor Johnson testified that on June 8, 2020, at about 10:30 p.m., he observed a vehicle driving northbound on a state highway with a defective passenger-side headlight.

2

He stopped the vehicle based on the defective headlight, and the driver identified himself as Steinert. Johnson observed that Steinert's speech was slow and that he was stumbling over his words, which led Johnson to believe that Steinert "was under the influence of something." Johnson did not, however, observe the odor of intoxicants or any "driving habits" suggesting intoxication.

¶5 Johnson testified that he had past experience with Steinert, which involved methamphetamine. Given that past experience, he decided to ask Canine Officer Ryan Wilson to respond to the scene to perform a dog sniff of Steinert's vehicle. Wilson and Deputy Adam Boney arrived on the scene while Johnson was preparing a written warning regarding Steinert's defective headlight. Wilson and Boney directed Steinert and his passenger to exit the vehicle, which they did. Johnson then heard "bickering" between Steinert and Boney, so he exited his own vehicle and went to assist the other officers.

¶6 At that point, Boney advised Johnson that a "syringe with brown residue" had been found on Steinert's person. Steinert and his passenger were then placed in handcuffs. Based on the syringe, the officers decided to search Steinert's vehicle, but no contraband was located during that search. After the search, Boney informed Johnson that Steinert had admitted using methamphetamine at 2:00 p.m. that day—about 8.5 hours earlier. Johnson testified that his "training and experience" included "speaking with DRE's [drug recognition experts] in the Forest County Drug Task Force who advised [him that] meth can stay in the system [for] up to 24 hours." Based on that knowledge, as well as Steinert's "slow, stuttered speech" and his admission to using methamphetamine 8.5 hours earlier, Johnson believed that Steinert was under the influence of methamphetamine.

3

¶7      The officers then decided to administer field sobriety tests. Johnson explained, however, that they did not want to conduct those tests at the scene of the stop because they "thought it would be better to bring [Steinert] back to a control environment" where a DRE assessment could take place. Johnson advised Steinert that he was under arrest for possession of drug paraphernalia, and Steinert was then transported to the Forest County Sheriff's Office, where he refused to perform field sobriety tests. Thereafter, Johnson read Steinert the Informing the Accused form, and Steinert refused to submit to a chemical test of his blood. The officers subsequently obtained a warrant to draw Steinert's blood.

¶8      On cross-examination, Johnson reiterated that Steinert was placed under arrest for possession of drug paraphernalia at the scene of the traffic stop. Johnson testified that at the time of the stop, he believed the syringe found on Steinert constituted drug paraphernalia. Johnson conceded, however, that he had since learned the syringe did not qualify as drug paraphernalia under the relevant statute. *See* WIS. STAT. § 961.571(1)(b)1. Johnson did not testify that Steinert was placed under arrest for any other offense at the scene of the stop.

¶9      Following Johnson's testimony, Steinert argued that the circuit court could not revoke his operating privilege based on his refusal to submit to a blood test because his arrest was unlawful. Specifically, he contended that the officers lacked probable cause to arrest him at the scene of the traffic stop, and that they violated WIS. STAT. § 968.24 by transporting him outside the vicinity of the stop to perform field sobriety tests, without probable cause to do so.

¶10     The circuit court rejected Steinert's arguments, concluding: (1) the officers "quite possibly" had probable cause to arrest Steinert for operating a motor vehicle while intoxicated (OWI) at the scene of the traffic stop, but they did

4

not arrest him for OWI at that point; (2) Steinert's transportation to the sheriff's office was reasonable under the circumstances and did not violate WIS. STAT. § 968.24; and (3) the officers' observations after Steinert arrived at the sheriff's office gave rise to probable cause to arrest him for OWI. The court therefore concluded that Steinert was lawfully arrested for OWI at the sheriff's office. The court further concluded that Johnson read Steinert the Informing the Accused form "in compliance with the statute," that Steinert refused the requested test of his blood, and that Steinert's refusal was unreasonable. The court therefore entered a final judgment revoking Steinert's operating privilege, and Steinert now appeals.

## DISCUSSION

¶11    On appeal, Steinert renews his argument that the officers lacked probable cause to arrest him for possession of drug paraphernalia at the scene of the traffic stop. In response, the County correctly concedes that the officers lacked probable cause to arrest Steinert for that offense. WISCONSIN STAT. § 961.571(1)(b)1. expressly states that the term "drug paraphernalia" excludes "[h]ypodermic syringes, needles and other objects used or intended for use in parenterally injecting substances into the human body." As such, the syringe found on Steinert's person during the stop did not qualify as drug paraphernalia, and the officers therefore lacked probable cause to arrest him for possession of drug paraphernalia.

¶12    Absent a valid basis for his arrest at the scene of the stop, Steinert next argues the circuit court erred by concluding that the officers did not violate WIS. STAT. § 968.24 when they transported him to the sheriff's office to perform field sobriety tests. Section 968.24 permits a law enforcement officer to stop and question a person in a public place, without arresting the person, when the officer

5

"reasonably suspects that such person is committing, is about to commit or has committed a crime." The statute provides, however, that the temporary detention and questioning "shall be conducted in the vicinity where the person was stopped." Sec. 968.24.

¶13 Steinert asserts that the officers transported him outside the vicinity of the traffic stop when they moved him to the sheriff's office, which was six miles away. He therefore contends that his transportation to the sheriff's office was not permitted by WIS. STAT. § 968.24 and instead constituted a "de[ ]facto arrest" without probable cause. As a result, Steinert argues that his subsequent arrest for OWI at the sheriff's office was unlawful. Because he was not lawfully arrested, Steinert argues his refusal to submit to a blood test was not unreasonable, and the circuit court thus erred by revoking his operating privilege. *See State v. Anagnos*, 2012 WI 64, ¶43, 341 Wis. 2d 576, 815 N.W.2d 675 (noting that a court may not revoke a defendant's operating privilege if it determines that the defendant was not lawfully placed under arrest).

¶14 The County does not address Steinert's argument that his transportation to the sheriff's office was outside the vicinity of the stop and therefore violated WIS. STAT. § 968.24. Instead, the County contends that Steinert was lawfully arrested at the scene of the stop because the officers had probable cause to arrest him for operating a motor vehicle with a detectable amount of a restricted controlled substance in his blood. Although the officers erroneously stated at the scene of the stop that they were arresting Steinert for possession of drug paraphernalia, the County correctly notes that the legality of an arrest "does not depend on whether the arresting officer articulates the correct legal basis for the arrest" or on "the subjective motivation of the arresting officer." *State v. Repenshek*, 2004 WI App 229, ¶10, 277 Wis. 2d 780, 691 N.W.2d 369. Stated

6

differently, "even when an officer acts under a mistaken understanding of the crime committed, an objective test is used to determine the legality of the arrest." *Id.*, ¶11.

¶15    Applying that objective test in the instant case, we agree with the County that the officers had probable cause to arrest Steinert at the scene of the traffic stop for operating a motor vehicle with a detectable amount of a restricted controlled substance in his blood.  The existence of probable cause presents a question of law that we review independently.  *State v. Kutz*, 2003 WI App 205, ¶13, 267 Wis. 2d 531, 671 N.W.2d 660.  "Probable cause for arrest exists when the totality of the circumstances within the arresting officer's knowledge would lead a reasonable police officer to believe that the defendant probably committed a crime."  *Id.*, ¶11.  The information must be sufficient to lead a reasonable officer to believe that the defendant's involvement in a crime is more than a mere possibility; however, the information need not rise to the level of proof beyond a reasonable doubt, or even establish that the defendant's guilt is more likely than not.  *Id.*  In other words, probable cause "requires only that the facts available to the officer would warrant a person of reasonable caution to believe that an offense likely was committed."  *State v. Nieves*, 2007 WI App 189, ¶14, 304 Wis. 2d 182, 738 N.W.2d 125.

¶16    Here, the facts available to the officers would have warranted a person of reasonable caution to believe that Steinert had likely violated WIS. STAT. § 346.63(1)(am), which provides that no person may operate a motor vehicle while the person "has a detectable amount of a restricted controlled substance in his or her blood."    The    term    "restricted    controlled    substance"    includes methamphetamine.  *See* WIS. STAT. § 340.01(50m)(d).  Notably, a conviction under § 346.63(1)(am) does not require proof that the person was impaired at the

time he or she operated a motor vehicle, only that a detectable amount of a restricted controlled substance was present in his or her blood. *See **State v. Smet***, 2005 WI App 263, ¶23, 288 Wis. 2d 525, 709 N.W.2d 474.

¶17    Before Steinert was placed under arrest at the scene of the traffic stop, Johnson had observed that Steinert's speech was slow and that he was stumbling over his words. The officers also knew that a syringe, which is commonly used to inject illegal drugs, had been found on Steinert's person.[2]  In addition, Johnson had prior experience with Steinert, which involved methamphetamine. Steinert also told the officers that he had used methamphetamine approximately 8.5 hours before the stop, and Johnson knew, based on his training and experience, that methamphetamine can remain in a person's system for up to twenty-four hours. Taken together, these facts gave rise to probable cause that Steinert had operated a motor vehicle with a detectable amount of a restricted controlled substance in his blood.

¶18    In his reply brief, Steinert argues "the ability to opine [that] a motorist has a detectable amount of meth at a given time is a question beyond the ability of the average person." He further contends that Johnson "lacked the capacity to opine if Steinert was driving with a detectable amount of meth" in his blood. Steinert then asserts that the general proposition that methamphetamine

---

[2] Although Steinert's possession of the syringe did not give rise to probable cause to arrest him for possession of drug paraphernalia, the syringe may be considered in the totality-of-the-circumstances analysis when determining whether probable cause existed to arrest Steinert for operating a motor vehicle with a detectable amount of a restricted controlled substance in his blood. *See **State v. Manlick***, Nos. 2014AP2138-CR and 2014AP2626-CR, unpublished slip op. ¶¶10-11 (WI App Apr. 1, 2015); *see also* WIS. STAT. RULE 809.23(3)(b) (noting that an unpublished opinion authored by a single judge and issued after July 1, 2009, may be cited for its persuasive value).

*can* remain in a person's system for twenty-four hours does not establish probable cause to believe that methamphetamine *actually was* present in his system 8.5 hours after he used it. He contends the record does not support a determination that Johnson "had the qualifications to opine [that] meth probably was present [in his blood] at that time."

¶19 In support of this argument, Steinert cites **State v. Chitwood**, 2016 WI App 36, ¶¶1, 34, 369 Wis. 2d 132, 879 N.W.2d 786, where we held that a DRE's testimony about whether the defendant was under the influence of a particular drug was "based on specialized knowledge" and was therefore subject to WIS. STAT. § 907.02(1)—the statute governing the admissibility of expert testimony. The present case, however, does not involve the admissibility of expert testimony. It involves a determination of whether the facts gave rise to probable cause to believe that Steinert operated his motor vehicle with a detectable amount of a restricted controlled substance in his blood. Steinert does not cite any legal authority in support of the proposition that Johnson was required to have any sort of qualifications as an expert in order to make that determination.

¶20 As noted above, probable cause does not require an officer to determine that an individual more likely than not committed a crime. **Kutz**, 267 Wis. 2d 531, ¶11. Instead, it merely requires that the facts available to the officer "would warrant a person of reasonable caution to believe that an offense likely was committed." **Nieves**, 304 Wis. 2d 182, ¶14. Knowing that methamphetamine can stay in a person's system for up to twenty-four hours, and knowing that Steinert had admitted using methamphetamine approximately 8.5 hours before the stop, a reasonable officer in Johnson's position could conclude it was likely that Steinert had a detectable amount of a restricted controlled substance in his blood at the time he operated his motor vehicle. Moreover, the officers also knew that

9

Johnson's speech was slow and stumbling, that he had previously been involved with methamphetamine, and that a syringe had been found on his person. All of these facts, taken together, gave rise to probable cause to arrest Steinert for operating a motor vehicle with a detectable amount of a restricted controlled substance in his blood.

¶21 We therefore agree with the County that Steinert was lawfully arrested at the scene of the traffic stop. Steinert does not dispute that if the officers had probable cause to arrest him at the scene of the stop, then his subsequent transportation to the sheriff's office did not violate WIS. STAT. § 968.24.[3] Because Steinert was lawfully arrested, the circuit court properly determined that his refusal to submit to an evidentiary chemical test of his blood was unreasonable. Accordingly, we affirm the court's judgment revoking Steinert's operating privilege.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[3] Under these circumstances, we need not address Steinert's additional argument that the circuit court erroneously exercised its discretion by refusing to consider a map that Steinert relied upon to establish the distance between the traffic stop and the sheriff's office. *See **Turner v. Taylor***, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (court of appeals need not address all issues raised by the parties if one is dispositive).