COURT OF APPEALS
DECISION
DATED AND FILED

February 3, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2023AP561-CR**

Cir. Ct. No.  **2021CT3**

STATE OF WISCONSIN

**IN COURT OF APPEALS
DISTRICT III**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

TROY A. WRY,

   DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Rusk County: BEVERLY WICKSTROM, Judge. *Affirmed*.

¶1    STARK, P.J.[1]  Troy A. Wry appeals from his judgment of conviction, entered pursuant to a no-contest plea, for operating a motor vehicle while intoxicated (OWI), third offense. Wry argues that the circuit court erred by

---

[1]  This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

denying his motion to suppress evidence because law enforcement lacked reasonable suspicion that Wry had committed, or was committing, an offense sufficient to conduct an investigatory stop of his vehicle.[2] For the reasons that follow, we affirm Wry's judgment of conviction.

## BACKGROUND

¶2    On October 2, 2020, at approximately 11:35 p.m., Deputy Braden Jilek, with the Rusk County Sheriff's Department, was alerted by dispatch "that an individual had called and stated that an individual [in a dark-colored pickup truck] had showed up at their house potentially intoxicated and … was asked to leave and did so." Dispatch did not provide Jilek with any additional identifying details, nor did dispatch relay why the complainant believed that the driver was intoxicated. It is unknown if the complainant provided any further details to dispatch.

¶3    Jilek began heading toward the complainant's residence. While Jilek was en route, dispatch informed him that the driver of the pickup truck had returned to the complainant's residence again but had departed. As he neared the residence, Jilek observed a vehicle matching the complainant's description pass by him, traveling in the opposite direction. Jilek turned around and began to follow that vehicle.

¶4    While Jilek was following the pickup truck, he observed the vehicle weaving within its lane of travel. Jilek explained that the road was "a dirt road so there was not an actual centerline," but he testified that he believed the vehicle "to

---

[2] The Honorable Steven P. Anderson denied Wry's motion to suppress. The Honorable Beverly Wickstrom entered Wry's judgment of conviction.

be swerving in its own lane." According to Jilek, the vehicle also "narrowly missed a couple of mailboxes." The pickup truck then turned onto Highway 27, which had "full road markings and center and fog lines." Jilek testified that while on Highway 27, the vehicle "continued to swerve in its own lane," but he did not observe any other problematic driving. Jilek continued to follow the pickup truck until it left Rusk County and entered Chippewa County, at which point Jilek ended his pursuit.

¶5     Jilek then decided to run the pickup truck's license plate number, which returned an address for the vehicle's registered owner in Rusk County. Jilek traveled toward that address "in an attempt to potentially locate that vehicle." He parked near the corner of County Road VV and Spur Road, where he waited "for approximately 10 to 15 minutes" before he observed a dark-colored pickup truck. Jilek began following the pickup truck, and he noted that its license plate number matched that of the pickup truck he had been following earlier. Jilek then activated his vehicle's emergency lights and initiated a traffic stop. The driver of the pickup truck was identified as Wry.

¶6     The State charged Wry with OWI and operating with a prohibited alcohol concentration, both as third offenses. Wry filed a motion to suppress the evidence obtained as a result of the traffic stop on the ground that Jilek detained Wry without possessing an objectively reasonable suspicion that Wry had committed, or was committing, an offense. The circuit court held an evidentiary hearing on Wry's suppression motion, during which Jilek testified.

¶7     The circuit court, thereafter, issued an oral ruling denying Wry's motion. According to the court, the complainant was not an anonymous caller because they called from a residence and "could be identified for purposes of later

proceedings." Further, the court found that Wry's act of going to the complainant's home, being asked to leave, and then coming back, all "at 11:35 at night, … is unusual behavior." The court also noted that Jilek observed Wry swerving in his own lane "and narrowly miss[ing] a couple of mailboxes." Thus, the court determined that Jilek had enough information at his disposal to conduct an investigatory traffic stop. Wry appeals.[3]

## DISCUSSION

¶8      Under Wisconsin law, a traffic stop must be supported by reasonable suspicion. *State v. Floyd*, 2017 WI 78, ¶¶19-20, 377 Wis. 2d 394, 898 N.W.2d 560. However, "[r]easonable suspicion is 'a low bar.'" *State v. Nimmer*, 2022 WI 47, ¶25, 402 Wis. 2d 416, 975 N.W.2d 598 (citation omitted). "Reasonable suspicion requires that '[t]he officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion of the stop.'" *Floyd*, 377 Wis. 2d 394, ¶20 (alteration in original; citation omitted); WIS. STAT. § 968.24 (codifying the reasonable suspicion standard for investigative stops). This standard requires that the stop be "based on more than an officer's 'inchoate and unparticularized suspicion or hunch.'" *State v. Post*, 2007 WI 60, ¶10, 301 Wis. 2d 1, 733 N.W.2d 634 (citation omitted).

¶9      "The question of whether a traffic stop is reasonable is a question of constitutional fact." *Id.*, ¶8. "We review the circuit court's findings of historical fact under the clearly erroneous standard, and we review independently the

---

[3] An order denying a motion to suppress evidence may be reviewed on appeal notwithstanding the defendant's guilty or no-contest plea. WIS. STAT. § 971.31(10).

application of those facts to constitutional principles." *Id.* "The determination of reasonableness is a common sense test" that "is determined based on the totality of the facts and circumstances." *Id.*, ¶13; *State v. Williams*, 2001 WI 21, ¶22, 241 Wis. 2d 631, 623 N.W.2d 106 ("Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability." (citation omitted)). "The crucial question is whether the facts of the case would warrant a reasonable police officer, in light of his or her training and experience, to suspect that the individual has committed, was committing, or is about to commit a crime." *Post*, 301 Wis. 2d 1, ¶13. The government carries the burden of proving that a traffic stop was reasonable. *Id.*, ¶12.

¶10 On appeal, Wry argues that "Jilek did not have an objectively reasonable suspicion that Wry was under the influence of an intoxicant, nor that he had committed or was committing any offense when Jilek required Wry to submit to detention." According to Wry, "there [was] no evidence in the record regarding the caller's basis for thinking Wry was intoxicated, and the details of the complaint that Jilek was able to corroborate were relatively weak" because "Jilek was merely able to corroborate that Wry's pickup truck matched the complainant's limited description of the suspected vehicle's body style and color."

¶11 Although this is a close case, we conclude that the information provided by the complainant in conjunction with Jilek's own observations provided reasonable suspicion to stop Wry's vehicle. First, the complainant's report contained sufficient indicia of reliability. *See Williams*, 241 Wis. 2d 631, ¶¶31, 33-36. As the circuit court observed, the complainant did not provide an anonymous report to the police. The individual was a citizen informant who contacted law enforcement; identified themself by, at the very least, providing their address; reported that an intoxicated driver had been at their home, twice; and

5

gave a description of the vehicle in question. *See **State v. Miller***, 2012 WI 61, ¶31 n.18, 341 Wis. 2d 307, 815 N.W.2d 349 ("[A] citizen informant—'someone who happens upon a crime or suspicious activity and reports it to police'—… is generally considered among the most reliable informants." (citation omitted)); ***Williams***, 241 Wis. 2d 631, ¶¶35-36 & n.12, ¶38 ("[W]e view citizens who purport to have witnessed a crime as reliable, and allow the police to act accordingly, even though other indicia of reliability have not yet been established."); ***State v. Rutzinski***, 2001 WI 22, ¶20, 241 Wis. 2d 729, 623 N.W.2d 516 ("[The] threat of potential arrest … could lead a reasonable officer to conclude that the informant would not provide a false tip.").

¶12  Jilek then corroborated the limited information the complainant provided and made his own observations. Importantly, Jilek located a vehicle matching the complainant's description near the complainant's home, which provides additional verification of the complainant's report. *See **Williams***, 241 Wis. 2d 631, ¶¶39-40 (discussing corroboration of innocent details of the tip). Jilek also witnessed that the vehicle was swerving within its lane, both on a dirt road and on Highway 27, and that the vehicle "narrowly missed [hitting] a couple of mailboxes." *See **Post***, 301 Wis. 2d 1, ¶24 ("[A] driver's actions need not be erratic, unsafe, or illegal to give rise to reasonable suspicion."). We therefore conclude that the complainant's sufficiently reliable report in conjunction with Jilek's own observations provided reasonable suspicion to stop Wry's vehicle, and the investigatory stop did not violate Wry's constitutional rights.

¶13  Wry challenges this conclusion on several grounds. First, he argues that pursuant to ***Post***, "weaving within a single traffic lane does not *alone* give rise to the reasonable suspicion necessary to conduct an investigative stop of a vehicle." ***Id.***, ¶2 (emphasis added). But Wry fails to acknowledge our supreme

court's use of the words "alone" and "without more" to clarify its holding in ***Post***. *See **id.***, ¶¶2, 9, 26. Contrary to Wry's argument, law enforcement *may* consider a vehicle weaving within its own lane of traffic when deciding whether to conduct an investigatory stop, but it must do so within the totality of the circumstances to establish reasonable suspicion, and the weaving cannot serve as the sole basis for the stop. *See **id.***, ¶¶14, 37. Here, as detailed above, Jilek had more information than only that a vehicle was weaving within its own lane to determine that there was reasonable suspicion for the investigatory stop.

¶14    Next, Wry contends that there was a "complete lack of information regarding the caller's basis for thinking Wry was intoxicated," which renders the report "insufficient to be given much weight in the reasonable suspicion calculus." On appeal, the State concedes that "there was no testimony from the citizen informant why [they] believed that Wry was intoxicated," but we agree with the State that the complainant was clearly concerned enough about their interaction with Wry to contact police. Further, we agree with the circuit court that the fact that Wry first came to the complainant's house at almost midnight and later returned after having been told to leave was "unusual behavior" that Jilek was not required to ignore. *See **id.***, ¶36 ("[W]e note that the incident took place at 9:30 at night. While this is not as significant as when poor driving takes place at or around 'bar time,' it does lend some further credence to [law enforcement's] suspicion that Post was driving while intoxicated.").

¶15    Wry's next argument suggests that Jilek's failure to execute a traffic stop on him before he left Rusk County demonstrated that Jilek did not believe that he had reasonable suspicion to stop Wry. According to Wry, "at the time of the stop, [the officer must] know or reasonably believe that those facts *actually* give rise to probable cause or reasonable suspicion." *See **United States v.***

*Hughes*, 606 F.3d 311, 316 (6th Cir. 2010). Wry contends that "[i]f Jilek reasonably believed that" a vehicle weaving within its own lane and almost hitting mailboxes "actually gave rise to a reasonable suspicion that the vehicle's driver was intoxicated, [Jilek] would have certainly initiated a traffic stop at that time," but he "made the decision not to initiate a traffic stop" and "allowed the pickup truck to continue … onto Highway 27." Further, citing *State v. Newer*, 2007 WI App 236, ¶8, 306 Wis. 2d 193, 742 N.W.2d 923, Wry argues that because Jilek "testified that while following the pickup truck on Highway 27, he did not observe any dangerous or problematic driving, or any equipment-related traffic violations," his observations "dissipated any reasonable suspicion of impairment that existed, even assuming for the sake of argument that it did exist at one point."

¶16 Wry's arguments do not persuade us. First, Jilek's failure to stop Wry immediately upon observing him weaving within his own lane of traffic is of no legal significance. Wry's argument improperly reframes the reasonable suspicion inquiry as a subjective assessment of Jilek's confidence in his assessment of reasonable suspicion as inferred by his delayed enforcement decisions. Reasonable suspicion is judged by an objective standard. *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968); *see also* *State v. Repenshek*, 2004 WI App 229, ¶10, 277 Wis. 2d 780, 691 N.W.2d 369 ("[T]he legality of an arrest does not depend on the subjective motivation of the arresting officer.").

¶17 Although Wry cites *Hughes* in support of his position, that court's discussion fails to support his point. In *Hughes*, the court's pronouncement that an officer must "know or reasonably believe that those facts *actually* give rise to probable cause or reasonable suspicion" was immediately followed by the court's clarification that "a police officer must know or reasonably believe that the driver of the car is doing something that represents a violation of law" and that "[t]his

rule might be better stated as saying that police officers may not look for after-the-fact justifications for stops that would otherwise be impermissible." *Hughes*, 606 F.3d at 316. *Hughes* does not stand for the proposition that an officer's decision to delay a stop or continue observation negates the existence of reasonable suspicion or that officers are constitutionally required to act at the earliest possible moment suspicion arises.

¶18 Wry's reference to *Newer* is equally unavailing. The question before the *Newer* court was whether "an officer's knowledge that a vehicle's owner's license is revoked will support reasonable suspicion for a traffic stop." *Newer*, 306 Wis. 2d 193, ¶2. The court determined that "[i]t is indeed a reasonable assumption that the person driving a particular vehicle is that vehicle's owner"; however, "[i]f an officer comes upon information suggesting that the assumption is not valid in a particular case, for example that the vehicle's driver appears to be much older, much younger, or of a different gender than the vehicle's registered owner, reasonable suspicion would, of course, dissipate." *Id.*, ¶¶7-8. Thus, while reasonable suspicion may dissipate based on later observations that undermine the initial basis for suspicion, *Newer* requires more than a temporary absence of additional suspicious behavior. Simply because Jilek did not observe further erratic driving on Highway 27 does not negate his earlier observations of the vehicle weaving within its lane and nearly striking mailboxes.

¶19 Finally, Wry argues that any reasonable suspicion of impairment that may have existed dissipated when Jilek lost sight of the pickup truck for a period of time after deciding to break off his pursuit. In support of his position, Wry provides the following quotation from the circuit court's discussion of his argument: "Anything could [have] happened. That drunk driver, who was not Mr. Wry, could [have] gone some place; and Mr. Wry got in the truck and drove home

9

stone cold sober. So you don't know that the driver didn't change. You don't know what happened." Wry further argues that "[t]hese reasonable suspicion problems arising from the pickup truck being unaccounted for for this extended period are only compounded by Jilek confirming that he did not observe who the driver of the pickup truck was despite following the vehicle for this extended period."

¶20 We disagree that reasonable suspicion dissipated under these circumstances. Even if "anything could [have] happened," such as Wry switching places with the individual who had been driving when Jilek first encountered the vehicle, an officer is not required to accept an innocent explanation where competing reasonable inferences could be drawn. *See State v. Kutz*, 2003 WI App 205, ¶12, 267 Wis. 2d 531, 671 N.W.2d 660; *State v. Hogan*, 2015 WI 76, ¶36, 364 Wis. 2d 167, 868 N.W.2d 124 ("Although officers sometimes will be confronted with behavior that has a possible innocent explanation, a combination of behaviors—all of which may provide the possibility of innocent explanation—can give rise to reasonable suspicion.").

¶21 Moreover, as Jilek explained at the hearing, after losing sight of the pickup truck, he waited near Wry's address for 10 to 15 minutes before the truck reappeared. Wry provides no legal support for his suggestion that the passage of this short amount of time caused reasonable suspicion to dissipate. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (stating that the court of appeals need not address undeveloped arguments or arguments unsupported by references to legal authority). He merely quotes the circuit court's summary of his argument, which the court rejected.

¶22   Accordingly, we conclude that under the totality of the circumstances, law enforcement had reasonable suspicion to conduct an investigatory stop of Wry's vehicle, and we affirm his judgment of conviction.

*By the Court.*—Judgment affirmed.

This opinion will not be published.   *See* WIS. STAT. RULE 809.23(1)(b)4.